STATE, Appellant, vs. JELCO, INC., Respondent.*

*September 13—October 8, 1957.*

---

* Motion for rehearing denied, without costs, on December 3, 1957.

632

634

For the appellant there were briefs by the *Attorney General* and *E. Weston Wood,* assistant attorney general, and oral argument by *Mr. Wood.*

For the respondent there was a brief by *Allan Polacheck* and *E. T. Kroog,* attorneys, and *Ralph K. Rosenbaum, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Kroog.*

CURRIE, J. The controlling statute on this appeal is sec. 85.01 (4) (g) which provides in part as follows:

". . . motor buses . . . owned and operated exclusively in the public service by the state, or by any county or municipality thereof, . . . and motor buses owned and operated by a private school or college and used exclusively for the transportation of students . . . shall be registered by the motor vehicle department upon receipt of a properly filled out application blank accompanied by the payment of a registration fee of $1 for each of said vehicles or trailers. . . ."

It is conceded that all of the buses were exclusively *"operated"* by the districts. The only issue before the court on this appeal is whether the vehicles were *"owned"* by the districts.

In construing the word *"owned,"* as it is employed in sec. 85.01 (4) (g), Stats., we consider the following extract from the opinion of this court in *Merrill R. & L. Co. v. Merrill* (1903), 119 Wis. 249, 253, 254, 96 N. W. 686, to be particularly pertinent:

"It cannot be denied that the word 'own' is used both colloquially and in the law to designate a great variety of interests in property. . . . Hence it is not surprising that we find the word in statutes given the widest variety of construction, usually guided in some measure by the objects sought to be accomplished in the particular instance. This has led some courts to declare that the word has no precise legal signification and may be applied to any defined interest in real estate. *Gitchell v. Kreidler,* 84 Mo. 476. It has been applied to a mere bailee in construing log-driving lien statutes in Wisconsin. Sec. 3337, Stats. 1898; *Wis. R. L. D. Asso. v.*

*Comstock L. Co.,* 72 Wis. 464, 40 N. W. 146. *The instances where the word 'own' has been held satisfied by something less than absolute and entire ownership are far too numerous to permit citation.* The following are a few in which mere leasehold interest has been deemed sufficient: [Cases cited]. Thus it appears very clearly that the word 'owned' is not a technical term; that it is a general expression to describe a great variety of interest, and may vary in significance according to context and subject matter." (Emphasis supplied.)

The instant case is not one where bare legal title was vested in the school districts with all other incidents of ownership remaining in the defendant. The districts had exclusive possession and dominion over the buses during ten of each twelve months during the contractual period. The districts also hired and supervised the bus drivers and paid for all of the gasoline used in operation of the vehicles.

This court in *American Motors Corp. v. Kenosha* (1957), 274 Wis. 315, 322, 80 N. W. (2d) 363, in determining which of two parties was the owner of certain personalty, placed great stress upon the element of which of the two must sustain the risk of loss in case of damage to, or destruction of, the property. Here the school districts were obligated to provide the insurance coverage against such loss. We, therefore, interpret the contracts as placing the risk of loss upon the districts and not the defendant. This is one more reason for holding the districts to be the owners of the buses.

It is our considered judgment that the districts *"owned"* the buses within the meaning of sec. 85.01 (4) (g), Stats., because, in addition to having legal title, the districts also had exclusive dominion and possession of them during the school term when they were operated by the districts, and the burden of bearing the risk of loss was upon the districts.

The state urges that in reality the relationship between the defendant and the districts was that of lessor and lessees. It is true that the Type A and Type B contracts read like leases and we have little doubt that the changed form that the

Type C and Type D contracts bore from their earlier counterparts was largely for the purpose of removing all resemblance to a lease. It must further be conceded that under a lease a lessee is often vested with wide powers of dominion over the leased property and may contract to bear the risk of loss. However, the highly distinguishing feature between the instant situation and the usual lessor-lessee relationship is here the legal title was actually transferred from the defendant to the districts. While such legal title standing alone would not be sufficient to qualify the districts as owner of the buses, when combined with the above-stated incidents of ownership vested in the districts, we deem that it is. As pointed out in the quoted extract from *Merrill R. & L. Co. v. Merrill, supra,* even the possessor of a leasehold interest has been held to be an "owner" under certain tax statutes.

It is further contended by the state that the placing of legal title in the districts was but a subterfuge to secure the benefit of the nominal registration fee provided by sec. 85.01 (4) (g), Stats., and evade the higher registration fees which otherwise would have been due. There is a distinction between tax avoidance and tax evasion which most courts recognize, the former being legitimate and the latter not. This court made such distinction in its opinion in *Wolf River v. Wisconsin Michigan Power Co.* (1935), 217 Wis. 518, 520, 259 N. W. 710, 98 A. L. R. 1369, when it stated:

"An intent to lessen one's tax burden or the promptings of a selfish purpose in the securing of an advantage by transfer of property will not destroy an otherwise valid deed. *Aberg v. Moe,* 198 Wis. 349, 224 N. W. 132, 226 N. W. 301."

Parenthetically it will be noted that the saving in registration fees by registering the title in the districts did not inure to the benefit of the defendant but to the school districts, which are agencies of the state. This is because the burden of paying all registration fees was placed by the contracts upon the school districts.

One further argument advanced by the state is that the required transfer back of title to the defendant at the termination of the contract prevents the districts from being the owners of the buses. We believe that this argument is fully answered by the decision of this court in *Wolf River v. Wisconsin Michigan Power Co., supra.* In that case the plaintiff town sought to recover real-estate taxes from the defendant utility corporation upon a parcel of land which the latter had conveyed to a nonstock and nonprofit corporation organized for the purpose of holding title to property to be used by the Boy Scouts of America. In order to recover such taxes it was necessary for the town to prove that the defendant, and not such nonprofit holding company, was the real owner of the property. The deed of conveyance from the defendant contained this clause (217 Wis. at p. 519):

"It is expressly understood and agreed that in the event the grantee shall use or suffer the use of said premises for any other purpose than as a campsite for the Boy Scouts of the Fox River Valley, or some other group, division, or organization of Boy Scouts, this conveyance shall thereupon become void and the title to said premises on demand shall revert to the grantor, its successors and assigns and shall have the right to re-enter and repossess itself of the same."

This court held in the *Wolf River Case* that until the condition of the conveyed property not being used by the Boy Scouts as a campsite occurred, title remained in the grantee corporation and it was the owner. In the instant case title to the buses remained in the districts until termination of the contracts.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). In my opinion the essence of the relationship between Jelco and its customer is that the school district is given the right to use a bus for a fixed period for a rental charge. There are no rights or obligations

between them which would not be more easily and naturally expressed in the form of a lease as indeed Jelco originally did. Artfully expressing the transaction in the terms of a transfer of ownership for a fixed period does not change its character.

The majority opinion notes that the advantage of the nominal registration fee inures to the benefit of the school district and not Jelco. It is doubtless true that a lessor of buses who successfully calls his lease a "sale" can offer this "economy" to a school district, while one who naively calls his lease a "lease" cannot. Statutes imposing taxes and awarding exemptions should be applied so that when the burden is lighter on one than on another, the difference will result from difference in substance and not merely in words.

I am authorized to state that Mr. Justice WINGERT joins in this dissent.

The following opinion was filed December 3, 1957:

PER CURIAM (*on motion for rehearing*). The brief of the attorney general in support of the state's motion for rehearing points out a mistake of fact appearing in our original opinion. In the statement-of-facts portion of such opinion it is erroneously stated that the contract required the districts to provide the insurance coverage for damage to, or destruction of, the buses. The contracts between Jelco and the school districts only required the carrying of liability insurance as to damage to property.

Without any express provision in the contracts requiring the school districts to insure the buses against damage or destruction, a close question is presented as to whether the risk of loss during the term of the contracts rested upon the districts. Jelco maintains that the unqualified contract requirement, that the districts turn over the buses to Jelco at the end of the contract term, placed such risk of loss upon

the districts. We find it unnecessary to pass on such issue. This is because we are satisfied that, independently of who bore the risk of loss, there were such rights of dominion vested in the districts, which coupled with legal title, made the districts the owners for the purposes of sec. 85.01 (4) (g), Stats.

The brief of the attorney general filed in support of the motion for rehearing also asks this court to take judicial notice of facts appearing in certain annual reports filed with the state superintendent of public instruction by school districts having contracts with Jelco. While this court has the power to take judicial notice of public records on file in the offices of various state officials and departments, it refuses to do so at this late stage of litigation. A request to take such judicial notice must be made prior to a motion for rehearing, if it is to be considered by the court.

The motion for rehearing is denied.