COLUMBUS PARK HOUSING CORPORATION, Plaintiff-Respondent,

v.

CITY OF KENOSHA, Defendant-Appellant-Petitioner.

Supreme Court

No. 02-0699. *Oral argument September 11, 2003.—Decided November 19, 2003.*

2003 WI 143

(Also reported in 671 N.W.2d 633.)

For the defendant-appellant-petitioner there were briefs by *Robert I. DuMez* and *O'Connor, Willems, DuMez, Alia & McTernan, S.C.,* Kenosha, and oral argument by *Robert I. DuMez.*

For the plaintiff-respondent there were briefs by *David L. Kinnamon, Anthony A. Tomaselli, David C. Swanson,* and *Quarles & Brady LLP,* Madison, and oral argument by *David L. Kinnamon.*

An amicus curiae brief was filed by *Gregg C. Hagopian* and *Genevieve O'Sullivan-Crowley,* assistant city attorneys, and *Grant F. Langley,* city attorney, on behalf of the City of Milwaukee.

An amicus curiae brief was filed by *Claire Silverman,* Madison, on behalf of League of Wisconsin Municipalities.

¶ 1. JON P. WILCOX, J. City of Kenosha (Kenosha) seeks review of a published court of appeals decision, *Columbus Park Housing Corporation v. City of Kenosha*, 2002 WI App 310, 259 Wis. 2d 316, 655 N.W.2d 495, that affirmed an order of the Kenosha County Circuit Court, David M. Bastianelli, Judge, granting summary judgment in favor of Columbus Park Housing Corporation (Columbus Park), finding that Columbus Park was exempt from certain real property taxes under Wis. Stat. § 70.11(4) (1999–2000).[1] Because we determine that Columbus Park has failed to satisfy the lessee identity condition in the preamble of § 70.11, we reverse the court of appeals' decision.

## I. FACTUAL BACKGROUND

¶ 2. The parties to this action have stipulated to the essential facts. Columbus Park is a nonstock, non-profit Wisconsin corporation that acquires blighted property in Kenosha, rehabilitates the property, and makes the property available for rent to qualified low-income families. The parties agree that Columbus Park is a benevolent association, within the meaning of Wis. Stat. § 70.11(4), whose mission is to improve the living conditions of the poor and underprivileged in Kenosha by providing safe, affordable housing.

¶ 3. Columbus Park seeks to fulfill its mission by engaging in two principal activities. First, Columbus Park rehabilitates dilapidated buildings by providing work and training opportunities to several at risk groups, including Kenosha County Jail inmates, who restore the buildings. Once the buildings are refur-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated. While the tax years in question predate the 1999–2000 version, there are no differences in the applicable statutory sections.

bished, Columbus Park rents units to qualifying low-income families who might otherwise be homeless. All of Columbus Park's rental units, with the exception of one unit occupied by its executive director and resident manager, are occupied by individuals with annualized income below the federal poverty level. Columbus Park then uses the rental income from its leased properties, in part,[2] for maintenance and construction debt reduction of its leased properties.

¶ 4. Columbus Park participates in the federal rent subsidy program under section 8 of the Federal Fair Housing Act. 42 U.S.C. § 1437f (1999).[3] Columbus Park charges its tenants 30% of their income and receives subsidies from the federal government through the Kenosha Housing Authority (the Authority), which bring the rents to reasonable market rates. The disputed taxes were levied on properties that had been rehabilitated and were rented to low-income individuals or awaiting occupancy.

¶ 5. The affidavit of Kathy Rippon, Executive Director of Columbus Park, provides that in 1998 and 1999 Columbus Park "used all of the leasehold income received from its tenants and all the lease subsidies received [from the federal government] for maintenance of the leased property, construction debt retirement of the leased property or both." Further, it states, "[g]ifts, grants and contributions made to [Columbus Park] by individuals, corporations, charitable organiza-

---

[2] Kenosha disputes that all of Columbus Park's leasehold income is used for such purposes.

[3] All references to the federal statutes and regulations governing the section 8 housing program are to the 1999 version unless otherwise noted. Any difference between the 1998 and 1999 versions of the United States Code and Code of Federal Regulations are immaterial to the provisions cited.

tions and governmental entities covered net losses incurred by [Columbus Park] on properties leased to low-income lessees in both 1998 and 1999."

## II. PROCEDURAL POSTURE

¶ 6. Columbus Park instituted this declaratory judgment action, seeking a determination that taxes assessed and levied on certain real property of Columbus Park by Kenosha in 1998 were illegal and that Columbus Park was entitled to a refund for taxes assessed by Kenosha and paid by Columbus Park on certain pieces of real estate in 1999. The circuit court granted Columbus Park summary judgment, finding it exempt from taxation under Wis. Stat. § 70.11(4); Kenosha appealed.

¶ 7. The court of appeals affirmed the circuit court's grant of summary judgment, determining that Columbus Park "exclusively used the properties in question for benevolent purposes in both 1998 and 1999." *Columbus Park,* 259 Wis. 2d 316, ¶ 16. The court of appeals also determined that Columbus Park met the rent use condition in the preamble of Wis. Stat. § 70.11. *Id.,* ¶ 24. Finally, the court of appeals held that Columbus Park satisfied the lessee identity condition in the preamble of § 70.11. *Id.,* ¶ 28.

## III. ISSUES

¶ 8. Kenosha raises three issues on appeal to this court: (1) whether a benevolent association satisfies the lessee identity condition in the preamble of Wis. Stat. § 70.11 when it rents property to low-income individuals participating in section 8 of the Federal Fair Housing Act; (2) whether a benevolent association meets the requirement in § 70.11 that it use all leasehold income for the purposes of maintenance of the

leased property, debt retirement, or both when it applies a portion of the leasehold income from one property to the maintenance and/or construction debt retirement of another property; and (3) whether a benevolent association meets the requirement in § 70.11(4) that the benevolent association "exclusively use" the properties in question when it leases such property to individual tenants. Because we conclude that Columbus Park has not satisfied the lessee identity condition in the preamble of § 70.11, we do not address the other two issues raised by Kenosha.

## IV. STANDARD OF REVIEW

¶ 9. This case arises from the circuit court's grant of summary judgment to Columbus Park. We review the grant of summary judgment de novo, applying the same standards as the circuit court. *Voss v. City of Middleton,* 162 Wis. 2d 737, 748, 470 N.W.2d 625 (1991). This court reverses a grant of summary judgment if it was based on an incorrect interpretation of a legal issue. *St. John's Lutheran Church v. City of Bloomer,* 118 Wis. 2d 398, 400, 347 N.W.2d 619 (Ct. App. 1984). The resolution of this dispute involves the interpretation of Wis. Stat. § 70.11(4) and the application of this statute to a particular set of facts. These are questions of law that this court reviews de novo. *Deutsches Land, Inc. v. City of Glendale,* 225 Wis. 2d 70, 79–80, 591 N.W.2d 583 (1999).

¶ 10. In construing a statute, our primary purpose is to give effect to the legislative intent embodied in the language of the statute. *Id.* at 80. However, when the language of a statute is unambiguous, " '[s]tatutory

interpretation . . . is confined to [] the language of the statute[.]' " *Burg ex rel. Weichert v. Cincinnati Cas. Ins. Co.*, 2002 WI 76, 254 Wis. 2d 36, ¶ 16, 645 N.W.2d 880 (citations omitted). Pursuant to Wis. Stat. § 990.01(1), all words and phrases shall be given their ordinary and accepted meaning but technical words shall be given their accepted legal meaning.

¶ 11. In addition, in construing tax exemption statutes, "taxation of property is the rule and exemption is the exception." *Deutsches Land*, 225 Wis. 2d at 80. *See also* Wis. Stat. § 70.109. Thus, this court applies a "strict but reasonable" interpretation to tax exemption statutes. *Id.* "Since exemption from the payment of taxes is an act of legislative grace, the party seeking the exemption bears the burden of proving that it falls within a statutory exemption." *Id.* Thus, any ambiguity in the statute is resolved in favor of taxation. *Id.*

V. ANALYSIS

¶ 12. In resolving whether Columbus Park is entitled to a tax exemption under § 70.11(4), this court must answer a single question: Does Columbus Park fall within the plain language of Wis. Stat. § 70.11(4)? Wisconsin Stat. § 70.11(4) exempts from taxation "[p]roperty owned and used exclusively by . . . benevolent associations . . . but not exceeding 10 acres of land necessary for location and convenience of buildings while such property is not used for profit." Further, § 70.11(4) provides: "Property that is exempt from taxation under this subsection and is leased remains exempt from taxation only if, in addition to the requirements specified in the introductory phrase of this section, the lessee does not discriminate on the basis of race."

68

¶ 13. The introductory section of Wis. Stat. § 70.11—the preamble—provides:

> Leasing a part of the property described in this section does not render it taxable if the lessor uses all of the leasehold income for maintenance of the leased property, construction debt retirement of the leased property or both and *if the lessee would be exempt from taxation under this chapter if it owned the property.*

Wis. Stat. § 70.11 (emphasis added).

¶ 14. In *Deutsches Land,* this court construed the preamble of § 70.11 as containing the following requirements:

> (1) the exempt organization must use the leasehold income for maintenance of the property, construction debt retirement, or both (the "rent use condition") and (2) the lessee would itself be entitled to an exemption if it owned the property (the "lessee identity condition"). If the exempt organization uses the rental income in ways other than provided for by the statute, no exemption can be claimed on the leased part of the property. Likewise, if the lessee itself is not an exempt organization but rather a for-profit organization, no exemption can be claimed on the leased part of the property.

*Deutsches Land,* 225 Wis. 2d at 93.

¶ 15. We conclude that Columbus Park is not entitled to a tax exemption under § 70.11(4) because it cannot meet the lessee identity requirement in § 70.11. Columbus Park cannot meet the lessee identity condition because the individuals to whom Columbus Park rents—its lessees—would not qualify under § 70.11 as tax exempt if they owned the property, as § 70.11 only exempts property owned by certain organizations and institutions that meet the statutorily specified criteria.

69

¶ 16. Columbus Park asks us to follow the approach utilized by the court of appeals in construing the lessee identity condition. The court of appeals reasoned that although the Authority "is not the true lessee of the properties within the technical definition of the term, the Authority's control is a relevant consideration in making a determination as to the ability of Columbus Park to qualify for an exemption."[4] *Columbus Park,* 259 Wis. 2d 316, ¶ 26. The court of appeals further reasoned that because Columbus Park's tenants would not be able to pay rent but for the federal government subsidies provided by the Authority and because the lessees were not for-profit businesses,

> [i]t would be an unreasonable construction of the word "lessee" in the context of this statute to apply it to the very individuals who are the objects of the tax-exempt activity. Consequently, we conclude that the term "lessee" should not be so technically defined so as to preclude the applicability of the tax exemption to Columbus Park.

*Id.,* ¶ 29.

---

[4] According to Columbus Park, the involvement of the authority is as follows: The Authority (1) requires new tenants of publicly-subsidized housing in the city to attend an orientation session that the Authority holds; (2) issues vouchers to income-qualified tenants that allows them to participate in the section 8 housing program; (3) conducts an initial inspection of the rental units to ensure compliance with minimum housing standards; (4) conducts an annual inspection of the rental units to ensure compliance with minimum housing standards; (5) requires the low-income tenants to make reports directly to the Authority showing a change in income; and (6) adjusts the monthly rent subsidies based on changes in the tenant's income. The Authority also enters into a contract directly with the owner to make payments on behalf of a family. 24 C.F.R. § 982.1(a)(2).

¶ 17. We consider the court of appeals' rationale flawed because, as noted by Judge Synder's dissent, the majority of the court of appeals did not cite to any legal authority for the proposition that an organization that is involved in establishing a lease on behalf of another and partially subsidizes the lease, but does not occupy the property or retain any possessory interest in that property, may nonetheless be considered the lessee of said property. *Id.,* ¶ 34. Moreover, the court of appeals did not explain what it meant by "relevant consideration"; nor did it elucidate what "non-technical" definition of "lessee" it was invoking.

¶ 18. The term "lessee" is an unambiguous legal term; under the applicable statutory rules of construction, we must ascribe to it its technical legal meaning. The term "lessee" is defined as "[o]ne who has a possessory interest in real or personal property under a lease; TENANT." *Black's Law Dictionary* 914 (7th ed. 1999). The court in *Deutsches Land,* 225 Wis. 2d at 94 n.13, interchangeably referred to this provision of the preamble of § 70.11 as "the tenant identity condition," and the " 'lessee identity condition.' " *Id.* at 93. "Tenant" is defined as "[o]ne who pays rent for the temporary use and occupation of another's land under a lease or similar arrangement." *Black's Law Dictionary* 1479 (7th ed. 1999).

¶ 19. Further, although the record does not contain a properly authenticated copy of an actual lease between Columbus Park and one of its lessees, the record does contain a sample lease with the signature of Executive Director Rippon.[5] This sample lease states,

---

[5] This "sample lease" was marked in the record as Exhibit 1 and was attached as part of Kenosha's brief in opposition to

"[l]andlord and [t]enant understand that their rights and obligations under the [c]ontract are subject to . . . Wis. Stat. Chapter 704, Wis. Admin. Code Chapter ATCP 134 . . . ."[6] Wisconsin Admin. Code § ATCP 134.02(12) defines "tenant" as "a person *occupying, or entitled to present or future occupancy* of a dwelling unit under a rental agreement . . . ." Wis. Admin. Code § ATCP 134.02(12)(June 1999)(emphasis added). Section ATCP 134.02(6) incorporates the definition of "lease" found in Wis. Stat. § 704.01(1). Section 704.01(1), Stats., defines "lease" as "an agreement, whether oral or written, *for transfer of possession of real property,* or both real and personal property, for a definite period of time." Wis. Stat. § 704.01(1) (emphasis added).

¶ 20. Under the established legal definition of "lessee," there can be no other conclusion except that Columbus Park's "lessees" are the low-income individuals to whom Columbus Park rents. It is undisputed that the Authority does not sign the leases, occupy the property, or retain any possessory interest in any of the

summary judgment. While Columbus Park objected to this sample lease in its briefs to the circuit court, the record does not indicate that Columbus Park ever made a motion to strike this material or that the circuit court did in fact strike this exhibit from the record. In any event, the sample lease is part of the record before us. While the lease is dated March 2001, we note that it is a standard lease form, drafted by an attorney, and it contains a 1999 copyright.

[6] Even if the sample lease was not authenticated, and thus not "properly" part of the record before us, Wis. Admin. Code Chapter ATCP 134 "applies to the rental of dwelling units located in this state." Wis. Admin. Code § ATCP 134.01 (June 1999). Thus, the above-cited provisions would be applicable to any lease executed in 1998 or 1999 regardless of whether the lease included a specific reference thereto.

rental units in question. At the court of appeals, Columbus Park conceded "its low-income tenants, who are not tax-exempt organizations, sign the leases . . . ." *Columbus Park,* 259 Wis. 2d 316, ¶ 25. Moreover, Columbus Park itself refers to the low-income individuals to whom it rents as "tenants" and the affidavit of Executive Director Rippon refers to Columbus Park's tenants as "lessees."

¶ 21. More important, however, is the undisputed fact that Columbus Park receives rent subsidies from the Authority under section 8 of the Federal Fair Housing Act. In order to participate in the assisted housing program, the federal government requires the Authority to approve of the lease entered into "between tenant and owner." 24 C.F.R. § 982.308(b)(1).[7]

¶ 22. Further review of the regulations governing section 8 housing programs supports the obvious conclusion that the low-income individuals, not the Authority, are Columbus Park's lessees. For instance, in order to receive rent subsidies, "[t]he tenant must have legal capacity to enter a lease . . . ." 24 C.F.R. § 982.308(a). An entity such as the Authority cannot lack legal capacity to sign a lease.

¶ 23. Moreover, the regulations provide:

> The PHA [Public Housing Authority] failure to pay the housing assistance payment to the owner is not a violation of the lease between the tenant and the owner. During the term of the lease the owner may not terminate the *tenancy of the family* for nonpayment of the PHA housing assistance payment.

---

[7] We note the current version of the regulation is more specific and requires that "[t]he tenant and the owner must enter a written lease for the unit. The lease must be executed by the owner and the tenant." 24 C.F.R. § 982.308(b)(1) (2003).

24 C.F.R. § 982.310(b)(2) (emphasis added). Likewise, if a tenant defaults on payments, the Authority is not evicted; the low-income family is evicted. In fact, every reference to the "lessee" or "tenant" in the regulations governing section 8 programs refers to the lessee or tenant as the low-income individual or family actually renting a unit.[8]

¶ 24. In addition, we find it significant that the Authority is involved in both sides of the landlord-tenant, lessor-lessee relationship. If Columbus Park's tenants cannot be considered independent lessees because of the Authority's involvement in administering the section 8 program, *Columbus Park,* 259 Wis. 2d 316, ¶ 26, then under the same rationale, Columbus Park itself can hardly be considered an independent lessor. Utilizing the court of appeals' methodology, we note that the Authority: (1) approves of a family's unit and tenancy, 24 C.F.R. § 982.1(a)(2); (2) may provide information regarding tenancy and drug history to owner to

---

[8] *See, e.g.,* 24 C.F.R. § 982.301(b)(12)(Public Housing Authority (PHA) must provide a list of landlords "willing to lease a unit to the family . . . ."); 24 C.F.R. § 982.310(c)(2)(owner may terminate tenancy if tenant is engaged in various criminal activities); 24 C.F.R. § 982.309(d)(2)(family must give PHA notice of termination if it decides to terminate lease); 24 C.F.R. § 982.4309(d)(2)(housing assistance payment includes a payment by the PHA to the owner for rent under the family's lease; lease between owner and tenant establishes conditions for occupancy of the dwelling unit by the family); 24 C.F.R. § 982.1(a)(2) (the family selects and rents a unit); 24 C.F.R. § 982.310(d)(1)(i)(owner may terminate lease for failure of family to accept offer of new lease or revision); 24 C.F.R. § 982.309(b)(3)(providing that while the Authority may cancel the contract with the owner or terminate assistance to the family, the lease itself terminates only when either the tenant or the owner terminate the lease).

assist in owner's screening of tenants, 24 C.F.R. § 982.307(b)(2); (3) receives a copy of a notice of termination of the lease from the family, 24 C.F.R. § 982.309(d)(2); (4) may determine the composition of a family that will receive housing assistance for rental unit, 24 C.F.R. § 982.201(c)(3); and (5) may provide, although not require, a model lease form for the owner and tenant to use, 24 C.F.R. § 982.308(c)(2). Finally, the lease itself, which is generally chosen or drafted by the landlord, must contain certain provisions mandated by the Department of Housing and Urban Development (HUD). 24 C.F.R. § 982.308(c)(1).

¶ 25. Therefore, we conclude that the Authority's involvement in administering the section 8 leasing program does not render it a de jure lessee for the purposes of § 70.11(4), as it does not occupy any of the units and none of the activities the Authority engages in confers upon it a possessory interest in any of the rental units. The Authority is no more a lessee simply because it makes payments on behalf of the low-income renters than the parents of college students are lessees because they subsidize their son or daughter's housing.

¶ 26. Columbus Park further argues that under *Town of Menominee v. Skubitz*, 53 Wis. 2d 430, 192 N.W.2d 887 (1972), this court may "enlarge" the meaning of the word lessee to encompass the Authority. In *Skubitz*, the appellant, a member of the Menominee Indian Tribe, owned several buildings on land owned by Menominee Enterprises, Inc. *Id.* at 433. Appellant repeatedly refused to enter into a lease or purchase the property upon which her buildings were located; however, she did pay a "land-use" fee to Menominee Enterprises. *Id.* The issue on appeal was whether Wis. Stat. § 70.17 permitted the Town of Menominee to assess

personal property taxes on the land that was owned by Menominee Enterprises but occupied by the appellant. *Id.* at 434. Although the court found that there was no formal or implied lease between the parties, *id.* at 435–36, after examining the legislative intent, the court concluded:

> It is evident that the legislature intended to define the treatment to be given to certain property situated on the land of another and did not mean to limit the relationship of the occupier of the land and the owner of the real estate to that of lessor-lessee. . . . [T]he term "leased lands" contained in sec. 70.17, Stats., should be construed broadly enough to encompass a multitude of situations in which the occupier of lands not owned by him places improvements on those lands.

*Id.* at 438–39. The court applied the rule that "the meaning of some words in a statute may be enlarged or restricted in order to harmonize them with the legislative intent of the entire statute." *Id.* at 437.

¶ 27. However, *Skubitz* is readily distinguishable from the case at hand. First, the court in *Skubitz* enlarged the term "leased lands" to include the situation where an individual owned buildings on land owned by another and paid a land use fee but had no formal lease. The appellant in *Skubitz* actually occupied the lands and possessed the buildings thereon. As discussed *supra,* a lessee necessarily is someone who pays consideration for the temporary possession and occupancy of property. In contrast, as previously noted, the Authority has absolutely no possessory rights in Columbus Park's property, nor does it occupy the property. Under no judicial contortion of the word "lessee" can the term be expanded to include someone who partially pays for the possessory rights of another in a piece of property.

¶ 28. Further, the rule in *Skubitz* is limited to situations where such an expanded or restricted construction of a word would further the legislative intent of the statute. As discussed *infra,* we find no clear indication that the legislature intended to exempt benevolent associations, such as Columbus Park, who rent their property to low-income individuals. Also, to apply the rationale of *Skubitz* in this case would violate the rule that in construing tax exemption statutes, "taxation of property is the rule and exemption is the exception." *Deutsches Land,* 225 Wis. 2d at 80. *See also* Wis. Stat. § 70.109. Finally, application of the rationale in *Skubitz* to this case would be repugnant to the established rules that any ambiguity in a tax exemption statute is resolved against the taxpayer, *Deutsches Land,* 225 Wis. 2d at 80, and that the taxpayer must "take the statute as it stands and bring [itself] plainly within [the statute's] terms." *Bowman Dairy Co. v. Wisconsin Tax Comm'n,* 240 Wis. 1, 5, 1 N.W.2d 905 (1942).

¶ 29. Thus, it is clear that under the standard legal definition of the word "lessee" and the facts and circumstances present, the "lessees" for purposes of § 70.11 are the low-income individuals to whom Columbus Park rents. It is undisputed that these low-income individuals would not qualify as tax-exempt under § 70.11 if they owned the property in question because § 70.11 only exempts property owned by certain specified organizations and institutions that meet the statutory criteria. Therefore, we hold that Columbus Park is not entitled to a property tax exemption under Wis. Stat. § 70.11(4) because under the plain language of § 70.11, its lessees would not qualify as tax exempt if they owned the units they rent.

77

¶ 30. We now turn to Columbus Park's arguments that despite the fact that it cannot meet the lessee identity condition in the preamble of § 70.11, it is nonetheless entitled to a tax exemption. First, Columbus Park asks us to construe the lessee identity condition as applying only where a benevolent association leases to a for-profit business entity. Columbus Park relies on our language in *Deutsches Land* that "if the lessee itself is not an exempt organization but rather a for-profit organization, no exemption can be claimed on the leased part of the property." *Deutsches Land,* 225 Wis. 2d at 93.

¶ 31. In *Deutsches Land,* this court analyzed whether a benevolent association devoted to the preservation of Germanic culture and heritage was entitled to a property tax exemption under § 70.11(4) when it leased a portion of the land it owned, the Bavarian Inn, to a for-profit entity. *Id.* at 76–79. Our language in *Deutsches Land* in no way limited the applicability of the lessee identity condition contained in the preamble of § 70.11 to situations where the benevolent association leases to a for-profit business. The language in *Deutsches Land* was couched in those terms merely because those were the facts presented to us in that case.

¶ 32. Moreover, Columbus Park's proposed reading of § 70.11 would ignore the plain language of the statute. First, the preamble itself does not contain any language that would limit its application to situations where a benevolent organization leases to a for-profit business. Further, § 70.11(4), the particular exemption here, explicitly refers to the language in the preamble: "Property that is exempt from taxation under this subsection and is leased remains exempt

from taxation only if, *in addition to the requirements specified in the introductory phrase of this section,* the lessee does not discriminate on the basis of race." Wis. Stat. § 70.11(4) (emphasis added). Thus, we conclude that under the plain language of the statute, the lessee identity condition in the preamble of § 70.11 is not limited to those instances where a benevolent association rents to a for-profit business entity.

¶ 33. Next, Columbus Park argues that it is entitled to a tax exemption as a matter of public policy. A good portion of its briefs and oral argument was concerned with the extent to which Columbus Park is engaged in eleemosynary activities, the fact that its lessees are the object of its benevolent activities, and the possibility that but for its benevolence, the low-income individuals to whom it rents would be homeless. In essence, Columbus Park asks this court to carve out an exception to the lessee identity condition and hold that this condition does not apply if the lessees are the objects of the organization's benevolence.[9]

¶ 34. Whether this court is of the opinion that Columbus Park *should* receive a tax exemption is irrelevant. Certainly Columbus Park's efforts to serve the poor are indeed laudable. However, whether an organization *should* benefit from a tax exemption is a

---

[9] This could also be an alternative interpretation of the court of appeals' decision, as it found that although the Authority was not the true lessee, because of Columbus Park's altruism and the economic plight of its tenants, it would be "an unreasonable construction of the term 'lessee' in the context of this statute to apply it to the very individuals who are the objects of the tax-exempt activity." *Columbus Park Housing Corp. v. City of Kenosha,* 2002 WI App 310, ¶¶ 26–29, 259 Wis. 2d 316, 655 N.W.2d 495.

policy decision, as tax exemptions exist purely by virtue of "legislative grace." *Deutsches Land,* 225 Wis. 2d at 80. "This court has long held that it is the province of the legislature, not the courts, to determine public policy." *Flynn v. DOA,* 216 Wis. 2d 521, 539, 576 N.W.2d 245 (1998). Under our tripartite system of government, it is the duty of this court to apply the policy the legislature has codified in the statutes, not impose our own policy choices—to do otherwise would render this court little more than a super-legislature. *Id.* at 529. Thus, we must apply the statute as written, not interpret it as we think it should have been written.

¶ 35. As noted by Columbus Park at oral argument, Wis. Stat. ch. 70 is not a comprehensive, perfectly woven web of tax exemptions covering the entire universe of tax paying entities; rather, it represents a conglomeration of exemptions granted to specific and well-delineated entities and property used in a certain fashion. The plain language of § 70.11(4) and § 70.11 limits the tax-exempt status of a benevolent organization that leases property to situations where the lessee would be tax-exempt if it owned the property—where the lessee is another tax-exempt organization. It does not contain an exception for individual lessees that are the subject of the benevolent organization's charity. If the legislature had not meant the lessee identity condition to apply in circumstances such as these, it could have explicitly limited the applicability of the preamble in subsection four. Our conclusion is buttressed by the fact that the legislature has carved out exceptions to the lessee identity requirement in other subsections. For example, subsection two, relating to municipal property states: "Leasing property exempt under this subsection, *regardless of the lessee and the use of leasehold*

*income,* does not render that property taxable." Wis. Stat. § 70.11(2) (emphasis added).

¶ 36. Having determined the statute is unambiguous, our interpretation is confined to its plain language. *Weichert,* 254 Wis. 2d 36, ¶ 16. Nevertheless, analysis of the legislative history validates our conclusion that the exemption does not apply to Columbus Park. The lessee identity requirement in the preamble of § 70.11 and the reference thereto in § 70.11(4) were added to the statute effective 1984 by virtue of 1983 Wis. Act 327. Essentially, the legislature moved the lessee identity and rent use condition from subsection four to the preamble and added a reference to the preamble in subsection four. In adding the reference to the preamble in subsection four, the legislature deleted the following language: "Leasing a portion of such property to *an organization* which if it owned the property itself would be exempt from taxation under this section . . . shall not render the property taxable, if all the leasehold income is used for maintenance." 1983 Wis. Act 327, § 4 (emphasis added).

¶ 37. As the previous version allowed an exemption to leased property only if the property was leased to another charitable organization, and § 70.11 currently only exempts certain property owned by specific organizations or institutions, there is no indication that the legislature intended to expand the exemption to cover benevolent organizations that rent to individuals. Rather, the legislature merely eliminated what would have been a redundancy when it reorganized the statute. The statutory revision did not change the nature of the lessee identity condition. The result of the change

was simply that the rent use and lessee identity conditions now apply to all subsections, unless specifically excluded.

¶ 38. The most persuasive indication that the exemption Columbus Park seeks was not intended is that the legislature added the exact exception that Columbus Park asks this court to impose to the lessee identity requirement to Wis. Stat. § 70.11(3)(b) by virtue of the same Act that amended subsection four and the preamble. Section 70.11(3)(b) was amended by 1983 Wis. Act 327 to read as follows: "In addition to the exemption of leased property specified in the introductory phrase of this section, a university or college may also lease property for *educational or charitable purposes without making it taxable* if it uses the income derived from the lease for charitable purposes." 1983 Wis. Act 327, § 4 (emphasis added). This is the exact same exception to the lessee identity requirement that Columbus Park asks this court to judicially graft onto subsection four. The fact that the legislature added this language to subsection three but not subsection four when it reorganized subsection four is a strong indication that it did not wish to exempt charitable organizations that lease property to individuals in order to further their charitable purposes.

¶ 39. Analysis of the proposed bill also confirms our conclusion that the lessee identity condition applies with equal force to Columbus Park as does the rent use condition contained in the preamble. The Report of the Joint Survey Committee on Tax Exemption analyzed the bill as follows:

> This bill would allow a person who owns property which is exempt under s. 70.11 to *lease* a part of that property *without changing the tax-exempt status* of the property if:

82

1. The lessor used all of the rental income for "mainte-
nance, construction debt retirement or both" and

2. If the lessee would be exempt from taxation under ch.
70, Stats., if it owned the property.

Report of the Joint Survey Committee on Tax Exemp-
tion (Sept. 1983) (emphasis in original). The analysis by
the Legislative Reference Bureau is substantially simi-
lar. *See* Legislative Reference Bureau Drafting File for
1983 Wis. Act 327, *Analysis by the Legislative Reference
Bureau* of 1983 A.B. 89. Thus, the legislative history of
§ 70.11(4) indicates that the legislature intended to
exempt property owned and leased by benevolent orga-
nizations from taxation only when the property was
leased to another tax-exempt organization under
§ 70.11.

¶ 40. Because our duty is to apply a "strict but
reasonable" interpretation to tax-exemption statutes,
and the language of § 70.11(4) is clear and unambigu-
ous, we decline to carve out an exception to the pre-
amble of § 70.11 to meet Columbus Park's situation.
Contrary to Columbus Park and the dissent's assertion,
to apply an unambiguous statute as written is not
unreasonable; rather, it would be unreasonable to ig-
nore the plain language of § 70.11 simply because of
Columbus Park's humanitarian efforts. As this court
stated in *Engineers and Scientists of Milwaukee, Inc. v.
City of Milwaukee,* 38 Wis. 2d 550, 562, 57 N.W.2d 572
(1968), "while an exemption for activities of this kind
might well serve a public purpose, the decision to allow
the exemption must be clearly spelled out by the
legislature." Columbus Park remains free to lobby the
legislature to create a specific exemption for its circum-
stances.

¶ 41. Columbus Park also directs our attention to a series of cases where Wisconsin courts have purportedly concluded that certain benevolent organizations were tax-exempt under § 70.11(4), where their lessees were the objects of their benevolence. *See Family Hosp. Nursing Home, Inc. v. City of Milwaukee,* 78 Wis. 2d 312, 254 N.W.2d 268 (1977); *Milwaukee Protestant Home for the Aged v. City of Milwaukee,* 41 Wis. 2d 284, 164 N.W.2d 289 (1969); *Friendship Vill. of Greater Milwaukee, Inc. v. City of Milwaukee,* 181 Wis. 2d 207, 511 N.W.2d 345 (Ct. App. 1993); and *St. John's Lutheran Church v. City of Bloomer,* 118 Wis. 2d 398, 347 N.W.2d 619 (Ct. App. 1984). However, none of these cases addressed the lessee identity requirement found in current § 70.11. These cases merely addressed the question of whether certain nursing and retirement homes constituted benevolent organizations within the meaning of § 70.11(4).[10] Not a single one of these cases stands for the proposition that an organization seeking an exemption under § 70.11(4) that does not meet the

[10] The issue in *Family Hospital Nursing Home, Inc. v. City of Milwaukee,* 78 Wis. 2d 312, 314, 254 N.W.2d 268 (1977), was whether the nursing home in question was a benevolent nursing home under the 1970–1971 version of Wis. Stat. § 70.11(4). Likewise, in *Milwaukee Protestant Home for the Aged v. City of Milwaukee,* 41 Wis. 2d 284, 291, 164 N.W.2d 289 (1969), this court merely considered whether retirement homes operating on a fee-charging but nonprofit basis qualified as charitable or benevolent associations under § 70.11. In *Friendship Village of Greater Milwaukee, Inc. v. City of Milwaukee,* 181 Wis. 2d 207, 220, 511 N.W.2d 345 (Ct. App. 1993), the court was only required to determine which entity owned and used the property in question. Finally, in *St. John's Lutheran Church v. City of Bloomer,* 118 Wis. 2d 398, 400, 347 N.W.2d 619 (Ct. App. 1984), the court again only addressed whether a retirement home for the aged constituted a benevolent association.

lessee identity requirement is nonetheless entitled to a tax exemption simply because of its benevolence.

¶ 42. Finally, Columbus Park argues that if we are to give § 70.11(4) its literal interpretation, severe consequences will result because a variety of property owned by benevolent organizations including, inter alia, nursing homes, summer camps, and portions of hospitals dedicated to the treatment of drug and alcohol abuse, would be denied tax exemptions. Columbus Park relies upon the court of appeals' decision in *M&I First National Bank v. Episcopal Homes Management,* 195 Wis. 2d 485, 536 N.W.2d 175 (Ct. App. 1995) as evidence of the supposed absurd results our decision will create.

¶ 43. The issue in *M&I First National Bank* was which party had a priority security interest in a fund in excess of $1,000,000 that contained entrance fees paid by the residents of Lake Oaks at DeKoven, an assisted living center for the elderly, when said facility defaulted on its mortgage obligation. *Id.* at 488. In affirming the circuit court's imposition of a constructive trust on the fund in favor of the residents, the court of appeals concluded that the "residency agreement" entered into between the tenants and the owner constituted a leasing arrangement under Wis. Adm. Code § ATCP 134.02, despite language in the contract stating it was not a lease. *Id.* at 500–502.

¶ 44. In reaching this conclusion, the court of appeals noted that the dominant and primary purpose of the residency agreement was to pay rent for the use and occupation of property and not the provision of services to the elderly. *Id.* at 501. The court noted that the facility was marketed as an assisted living center, not as a nursing home or life-care facility, and that the owner reserved the right to terminate the resident agreement if the resident could no longer indepen-

dently care for himself. *Id.* at 504–05. Specifically, the court stated that DeKoven "was neither a nursing home nor a continuing care facility." *Id.* at 505. Thus, the thrust of the court of appeals opinion in *M&I First National Bank,* for our purposes, is that an agreement whereby residents pay an entrance fee and continue to make monthly payments in exchange for the use and occupation of property constitutes a lease under Wis. Adm. Code § ATCP 134.02, in the absence of evidence that the primary or dominant purpose of the agreement was the provision of services.

¶ 45. We are not persuaded by Columbus Park's slippery slope argument, as we see nothing in the language of *M&I First National Bank* that would lead to the cataclysmic results Columbus Park predicts. Both nursing homes and continuing care facilities charge fees for the primary and dominant purpose of the provision of services. Residents in these facilities would not constitute "lessees" for purposes of § 70.11, as there is no "lease" in existence under the rationale of *M&I First National Bank.* A hospital providing alcohol and drug treatment and counseling similarly charges fees for the primary and dominant purpose of remuneration for the counseling and treatment services it provides. Likewise, it can hardly be said that the dominant and primary purpose of charging fees for various summer camps is for the use and occupation of property. Thus, our decision today will not undermine the tax-exempt status of these types of organizations.

## VI. SUMMARY

¶ 46. In conclusion, we hold that under the plain language of Wis. Stat. § 70.11(4), Columbus Park does not qualify for a tax exemption on the leased properties in question because Columbus Park cannot meet the

86

lessee identity condition in the preamble of § 70.11, as its lessees—the low-income individuals to whom it rents—would not be entitled to a tax exemption if they owned the property. Columbus Park has failed to "take the statute as it stands and bring [itself] plainly within [the statute's] terms." *Bowman Dairy Co.*, 240 Wis. at 5. Furthermore, we decline to limit the application of the preamble of § 70.11 to situations in which a benevolent association leases its property to a for-profit business. Finally, we decline to carve out a judicially created exemption to the lessee identity requirement where the lessees are the subjects of the organization's benevolence. We hold that Columbus Park is not entitled to a tax exemption under § 70.11(4) because it has not met the lessee identity requirement in § 70.11. We therefore reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 47. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). Applying a strict but reasonable interpretation to tax exemption statutes,[1] I would affirm the decision of the court of appeals and the judgment of the circuit court. I dissent because the majority opinion's approach is more strict than reasonable.

¶ 48. The issue in this case is whether Columbus Park Housing Corp., a not-for-profit benevolent housing association, is entitled to a tax exemption under Wis. Stat. § 70.11(4). The City of Kenosha stipulated that Columbus Park is a benevolent association within the meaning of § 70.11(4). Indeed, the City granted tax exemptions to Columbus Park's properties while they were being rehabilitated. The City denied exempt sta-

---

[1] *Deutsches Land, Inc. v. City of Glendale*, 225 Wis. 2d 70, 80, 591 N.W.2d 583 (1999).

tus to the properties only when the properties were subsequently occupied by low-income individuals. The sole dispute between Columbus Park and the City is over whether Columbus Park satisfies the lessee identity requirement contained in the preamble of Wis. Stat. § 70.11.

¶ 49. The court of appeals in this case concluded that the City's interpretation of Wis. Stat. §§ 70.11 and 70.11(4) produces an absurd result, namely, that Columbus Park qualifies for a tax exemption so long as it does not rent its properties to low-income individuals. The incongruity arises because Columbus Park cannot be a tax-exempt benevolent association to provide low-income housing to the poor and at the same time provide the benevolent service if it wishes to take advantage of the property tax exemption under § 70.11(4). In essence, the majority opinion's interpretation undermines the benevolent purpose of the benevolent institution. This is a strange interpretation and outcome, and our court has consistently held that "an absurd or unreasonable" construction of a statute is to be avoided.[2] An exemption should not be construed so narrowly as to defeat the legislative purpose.

¶ 50. The legislative history of Wis. Stat. § 70.11(4) shows that similar restrictions on leasing

---

[2] *See, e.g., State v. Delaney,* 2003 WI 9, ¶ 14, 259 Wis. 2d 77, 658 N.W.2d 416 ("[W]e may construe a clear and unambiguous statute 'if a literal application would lead to an absurd or unreasonable result' "). For cases reiterating the same interpretive rule, see, *e.g., State v. Jennings,* 2003 WI 10, ¶ 11, 259 Wis. 2d 523, 657 N.W.2d 393; *State v. Zielke,* 137 Wis. 2d 39, 51, 403 N.W.2d 427 (1987); *DeMars v. LaPour,* 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985); *Green Bay Redevelopment Auth. v. Bee Frank, Inc.,* 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984); *City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 236, 332 N.W.2d

have been part of the statute since the 19th century. The statutory history about the meaning of the restriction is inconclusive. I agree with Columbus Park that the primary concern of the legislature and courts seems to have been to limit the leasing of otherwise tax-exempt property for commercial purposes, not to prevent leasing to individuals who are the objects of a benevolent association's benevolent activities.

¶ 51. The majority opinion makes much of the fact that the word "lessee" is an unambiguous legal term and resorts to the legal dictionary for its meaning.[3] Yet case law has recognized that the word "leased" in a statute does not always mean leased[4] and that the word "owned" in a statute does not always mean absolute ownership.[5] These words depend on their context and legislative intent.

¶ 52. The majority opinion focuses on the fact that an individual signs the "lease," and the individual, not the Kenosha Housing Authority, is evicted on a breach of that lease.[6] While these are legitimate points that explain why, as conceded by the court of appeals, the Housing Authority is not a true lessee, the majority opinion does not account for the fact that the low-

---

782 (1983); *Braun v. Wis. Elec. Power Co.,* 6 Wis. 2d 262, 94 N.W.2d 593 (1959); *Guse v. Indus. Comm'n,* 189 Wis. 471, 476, 205 N.W. 428 (1925); *Ricco v. Riva,* 2003 WI App 182, ¶ 35, 266 Wis. 2d 696, 669 N.W.2d 193.

[3] Majority op., ¶ 18.

[4] *Town of Menominee v. Skubitz,* 53 Wis. 2d 430, 438, 192 N.W.2d 887 (1972) (the term "leased lands" in a tax statute "should be construed broadly enough to encompass a multitude of situations").

[5] *State v. Jelco,* 1 Wis. 2d 630, 635, 85 N.W.2d 487 (1957) (the word "owned" can be used to designate a great variety of interests in property and does not have to be restricted to absolute ownership).

[6] Majority op., ¶¶ 19–24.

income tenants are-not true lessees. True lessees do not require large subsidies from the government to secure housing. Likewise, true lessees need not comply with the stringent requirements of a government agency in order to maintain their leasehold.[7]

¶ 53. The court of appeals wisely acknowledged that although the Housing Authority "is not the true lessee of the properties within the technical definition of the term, the Authority's control is a relevant consideration in making a determination as to the ability of [Columbus Park] to qualify for an exemption."[8] The court of appeals determined that even though the Housing Authority's name is not on the lease, "to pretend that [Columbus Park's] tenants are independent lessees ignores the role of the Authority in administering and subsidizing the tenants."[9] I agree with the court of appeals that the Kenosha Housing Authority's pervasive control over the housing rentals coupled with its substantial financial contribution to the rent of the

---

[7] As the court of appeals explains:

The Authority: (1) requires new tenants of publicly-subsidized housing in the City to attend an orientation session that the Authority holds, (2) issues vouchers to income-qualified tenants that allows them to participate in the Section 8 housing program, (3) conducts an initial inspection of any Columbus Park rental unit selected by an income-qualified tenant to ensure compliance with applicable minimum housing standards, (4) conducts an annual inspection of Columbus Park's Section 8 rental units to ensure compliance with applicable minimum housing standards, (5) requires reports to be made by Section 8 tenants directly to the Authority showing any changes in monthly income, and (6) makes monthly adjustments to Section 8 tenants' rent subsidies based on changes in their income.

*Columbus Park,* 259 Wis. 2d 316, ¶ 25 n.4.

[8] *Id.,* ¶ 26.

[9] *Id.*

low-income occupants rendered the Housing Authority a lessee for purposes of this tax exemption statute.

¶ 54. A strict but reasonable construction of Wis. Stat. §§ 70.11 and 70.11(4) would appreciate that the relationship between the Housing Authority and the low-income individuals occupying Columbus Park's housing is sufficiently substantial to qualify the Housing Authority as a lessee for purposes of § 70.11. This interpretation of the statute is the better interpretation because it avoids the illogical result of discouraging benevolent associations created to provide low-income housing from providing low-income housing.

¶ 55. For the foregoing reasons, I dissent.