Ronald Ricco and Belinda Ricco, Plaintiffs-Appellants,

v.

Daniel Riva, Barbara Riva, John Hashek, Hashek Real Estate, Sue Reske and Realty Executives, Defendants-Respondents.

Court of Appeals

No. 02–2621. Submitted on briefs May 21, 2003.—Decided July 23, 2003.

2003 WI App 182

(Also reported in 669 N.W.2d 193.)

698

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Daniel W. Stevens* of *Stevens & Kroenig, LLC.* of Brookfield.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Eric S. Darling* of *Schmidt, Darling & Erwin* of Milwaukee.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. In their complaint, Ronald and Belinda Ricco alleged that Daniel and Barbara Riva had misrepresented the condition of real estate they had sold to the Riccos. At summary judgment, the trial court determined that the Riccos' expert witness, John Wantz, had misrepresented his qualifications both in this action and in a prior unrelated action. Based on that determination and further ruling that Wantz's summary judgment affidavit was untimely, the court struck the affidavit, dismissed the Riccos' misrepresentation claims, and barred Wantz from testifying at the trial as to the Riccos' remaining claims. In addition,

the court dismissed the Riccos' fraudulent misrepresentation claim under Wis. Stat. § 100.18 (2001–02)[1] on the basis that the parties had already entered into the contract at the time of any misrepresentation.

¶ 2. The Riccos brought a motion asking the trial court to reconsider its rulings. The court denied this motion, and we previously granted the Riccos' petition for leave to appeal this nonfinal order. We reverse the order and remand for further proceedings on the Rivas' summary judgment motion.

## BACKGROUND

¶ 3. We take the facts from the summary judgment record. On October 16, 2000, the Riccos contracted to purchase real estate from the Rivas. After the closing, the Riccos discovered various defects in the property resulting in this lawsuit. The complaint alleged the following claims against the Rivas: (1) breach of warranty, (2) intentional misrepresentation, (3) misrepresentation contrary to Wis. Stat. §§ 895.80 and 943.20(1)(d), (4) fraudulent representation contrary to Wis. Stat. § 100.18, (5) strict misrepresentation, and (6) negligent misrepresentation. The Riccos sought money damages or, alternatively, rescission and restitution.[2]

¶ 4. After issue was joined, the Rivas moved for summary judgment seeking dismissal of all of the Riccos' claims. In addition, the motion contended that

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] The Riccos also alleged claims of negligence and misrepresentation against the two brokers and sales agents who were involved in the transaction. In addition, the Riccos alleged a breach of contract claim against their home inspector.

the evidence did not support the Riccos' misrepresentation claims regarding certain specific categories of alleged damage (the roof, the siding, the heating, ventilating and air conditioning system, the indoor swimming pool and the stereo system).[3] In response, the Riccos supplied affidavits from Belinda Ricco and their expert, John Wantz. Wantz's affidavit represented that he was a licensed home inspector who had conducted thousands of home inspections and that he was familiar with construction standards and building defects relating to home construction. At the summary judgment hearing, the Riccos conceded that their claims for strict and negligent misrepresentation "[were] not viable."

¶ 5. Following arguments by the parties, the trial court sua sponte addressed the role of Wantz, making the following observations. The court had encountered Wantz as an expert in a previous unrelated trial. During the cross-examination of Wantz in that proceeding, "[Wantz] acknowledged what I think were misrepresentations in his resume." Wantz referred to himself as a "Master Home Inspector," a designation he attained by making it his "corporate or trade name," which "deceive[s]" people into thinking that he is licensed or certified as such. Wantz represents himself as a graduate of MSOE, although he does not have a diploma or a degree from MSOE. In support of this claim, Wantz cites to the dictionary definition that "graduate" means to move from one class to another. Wantz represents on his website that he has never been challenged in a

---

[3] The Rivas' summary judgment motion also sought a declaratory ruling relating to the measure of damages.

lawsuit when, in fact, he has lawsuits challenging his "holding himself out as being a licensed building or home inspector."

¶ 6.   Ultimately, the trial court held:

Now ordinarily credibility at a summary judgment motion hearing is reserved to the fact finder and not something to be considered in deciding summary judgment, because obviously the court is aware, we're all aware, there is a wide variance in the accuracy, frankness, and honesty of witnesses. And, generally, that is sorted out by the fact finder at trial, not on cold affidavits or depositions. However, it is the court's view that the court has an inherent power to protect the administration of justice and the integrity of the judicial process, and that includes the authority of the court to bar testimony from individuals where the court has a substantial and reasonable basis to conclude that the testimony would encompass lies or other attempts to mislead the fact finder . . . .

Having all of that in mind, considering the information presented about John Wantz and his testimony in this case, and also considering his prior testimony before me where I had a chance to observe him in a jury trial, the court is going to take the extremely unusual step as a prophylactic to protect the integrity of the judicial process in this case of barring John Wantz from testifying in this case. His affidavits are stricken as untimely, and for the prophylactic reasons stated.

¶ 7.   Having struck Wantz's affidavit, the trial court then addressed the merits of the Riccos' claims.[4] As to the Wis. Stat. § 100.18 fraudulent representation claim, the court held that "these representations were

---

[4] Noting the Riccos' concession that their claims for strict and negligent misrepresentation were not viable, the court dismissed those two claims and those matters are not before us.

no longer to the public" because the parties had already entered into a contract. Finally, the court dismissed the claims regarding specific items of damage stating, "Without Mr. Wantz there is not even a whiff of any proof that the homeowners knew, or should have known that there was a defect in these matters."[5]

¶ 8.   Following the trial court's rulings, the Riccos complained that the court had acted sua sponte without any request by any of the defendants to strike Wantz's affidavit or to strike Wantz as a witness. The Riccos additionally argued that the court had relied on inaccurate information about Wantz and that the deadline for naming experts had passed, leaving the Riccos without an expert necessary to prove their case. The court noted the objections, but adhered to its rulings.

¶ 9.   The Riccos followed with a formal motion for reconsideration. Following a hearing, the trial court confirmed its prior rulings. In addition, the court ruled that its dismissal of the fraudulent representation claim under WIS. STAT. § 100.18 was warranted on a further ground. The court observed that the statute does not apply to a broker who makes a representation not knowing that the assertion or representation was untrue, deceptive or misleading. Sec. 100.18(12)(b). Noting that the Riccos' claim against the Rivas was based on a representation made by the broker, the court held that the Riccos were improperly attempting to hold the Rivas vicariously liable for the broker's conduct.

¶ 10.   The Riccos then filed a petition for leave to appeal, which we granted. However, our order expressly limited the issues to "whether the circuit court erred in

---

[5] The real estate brokers and their respective agents had also moved for summary judgment. The trial court granted this motion as to the negligence claims, but denied the motion as to the misrepresentation claims. These rulings are not before us.

excluding the Riccos' expert and in dismissing their WIS. STAT. § 100.18 claim." Our order further stated, "We will not consider other grounds for granting summary judgment on the numerous claims dismissed by the circuit court . . . and the respondents may not raise other grounds for affirming the circuit court . . . ."

## DISCUSSION

### *Exclusion of Expert Witness*

#### 1. Basis of the Trial Court's Ruling

¶ 11.   We see the trial court's ruling as resting on three possible grounds:   (1) Wantz was incredible as a matter of law, (2) Wantz was unqualified as a matter of law, and (3) Wantz's affidavit was untimely.

#### 2. Incredible as a Matter of Law

¶ 12.   WISCONSIN STAT. § 907.02 governs expert testimony. It provides:   "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *Id*. The determination of whether an expert is qualified to testify is within the circuit court's discretion. *State v. Sprosty*, 2001 WI App 231, ¶ 27, 248 Wis. 2d 480, 636 N.W.2d 213, *review denied*, 2002 WI 2, 249 Wis. 2d 581, 638 N.W.2d 590 (Wis. Now. 27, 2001) (No. 00–2404).

¶ 13.   The Riccos argue that the trial court erroneously determined that Wantz was incredible as a matter of law. They contend that Wantz is a qualified

705

expert pursuant to WIS. STAT. § 907.02 and that his credibility was a matter for the jury to determine. Both the Riccos and the Rivas cite to our decision in *Sprosty*, a WIS. STAT. ch. 980 case, which addressed the admission of expert testimony despite the expert's past misconduct and misleading testimony. *Sprosty*, 248 Wis. 2d 480, ¶ 33. In that case, Sprosty challenged the trial court's refusal to strike testimony of the State's expert witness on grounds that the expert (1) lied about his credentials, which was contrary to the ethical standards of the American Psychological Association, and had been terminated from his current position because of such conduct, (2) lied about the circumstances surrounding his termination from a former job, (3) altered two WIS. STAT. ch. 980 reexamination reports (unrelated to Sprosty) without knowledge of the original authors, and (4) made an unauthorized deposit of state money. *Sprosty*, 248 Wis. 2d 480, ¶ 31. The trial court determined that the deposit was irrelevant to the case and that the witness's "misconduct" and misleading aspects of his testimony did not undermine his basic qualifications to give an expert opinion. *Id.*, ¶ 32.

¶ 14.   We held that the question was addressed to the trial court's discretion, and we upheld the court's discretionary ruling. *Id.*, ¶ 2. We concluded that while the expert's "past misconduct and misleading testimony may have impaired his credibility, it does not make his testimony incredible as a matter of law." *Id.*, ¶ 33. We reasoned that while the expert may have given inaccurate testimony regarding his job titles and the length of time he held a particular job, there was no dispute that he was a licensed psychologist or that he had experience evaluating sexually violent persons. *Id.* Further, we

were not convinced that the expert's dishonesty regarding his curriculum vitae rendered his opinion unreliable. *Id.*

¶ 15. Although *Sprosty* reached the opposite result from the ruling in this case, the Rivas argue that we are duty bound to uphold the trial court's exercise of discretion. However, an exercise of discretion based upon an error of law can constitute an erroneous exercise of discretion. *Juneau County Dep't of Human Servs. v. James B.*, 2000 WI App 86, ¶ 9, 234 Wis. 2d 406, 610 N.W.2d 144. Here, the trial court correctly acknowledged that summary judgment is generally not a proper forum for weighing the credibility of a witness. *Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 306–07, 552 N.W.2d 632 (Ct. App. 1996).

¶ 16. While it is not beyond a trial court's authority to declare a witness, expert or otherwise, incredible as a matter of law, we conclude that the summary judgment record does not support the trial court's declaration that Wantz was incredible as a matter of law. While Wantz's claims regarding some of his credentials are suspect and likely untrue, the summary judgment record nonetheless establishes that he is a "licensed home and building inspector," who has "inspected thousands of homes in the Milwaukee area," and that he is "familiar with construction standards building defects and problems relating to home construction." For the moment at least, these assertions are not in dispute. If the more aggravated conduct in *Sprosty* did not warrant striking the expert witness's testimony, it surely follows that the conduct in this case does not warrant that sanction.

¶ 17. We share the trial court's concerns about Wantz playing fast and loose with his qualifications.

But we part ways with the trial court on its holding that Wantz's specious claims about his credentials render his testimony incredible as a matter of law. In order to make that statement, we would have to hold that Wantz's testimony would be in conflict with the uniform course of nature or with fully established or conceded facts. *Chapman v. State*, 69 Wis. 2d 581, 583, 230 N.W.2d 824 (1975). Wantz's inflated estimation of himself and his credentials, while obnoxious to us, does not satisfy this test. The weight and credibility to be given to the opinions of expert witnesses are uniquely within the province of the fact finder. *Bloomer Hous. Ltd. P'ship v. City of Bloomer*, 2002 WI App 252, ¶ 12, 257 Wis. 2d 883, 653 N.W.2d 309. Here, as in *Sprosty*, Wantz's misleading testimony as to certain of his qualifications does not render his opinion as to defects in the Riccos' property incredible as a matter of law. *See Sprosty*, 248 Wis. 2d 480, ¶ 33.

### 3. Unqualified as a Matter of Law

¶ 18.   Although we are not certain, it may be that the trial court's ruling represents a determination that Wantz was unqualified as a matter of law. In the interests of completeness, we address this possibility.

¶ 19.   As we have already noted, WIS. STAT. § 907.02 allows for expert testimony when such evidence will "assist the trier of fact to understand the evidence or to determine a fact in issue." As one commentator has noted, this statute "continues the tradition of liberally admitting expert testimony." Daniel D. Blinka, WISCONSIN PRACTICE: WISCONSIN EVIDENCE § 702.202 (2d ed. 2001); *see also State v. St. George*, 2002 WI 50, ¶ 39, 252 Wis. 2d 499, 643 N.W.2d 777. Formerly, some jurisdictions conditioned the admissibil-

ity of expert testimony upon the "*Frye*"[6] test, which required the trial court to determine on a threshold basis whether the expert evidence had gained "general acceptance in the particular field to which it belongs." *State v. Peters*, 192 Wis. 2d 674, 686, 534 N.W.2d 867 (Ct. App. 1995). In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the United States Supreme Court held that the *Frye* test was superseded by Rule 702 of the Federal Rules of Evidence, which mirrors WIS. STAT. § 907.02. *See Peters*, 192 Wis. 2d at 686. Although departing from *Frye*, *Daubert* still required a trial court to assure that the expert testimony was reliable. *Peters*, 192 Wis. 2d at 687.

¶ 20.   However, Wisconsin was not among the jurisdictions that applied the *Frye* test. Instead, Wisconsin applied a relevancy test. *Peters*, 192 Wis. 2d at 687. Therefore, *Daubert* did not change the standard for the admissibility of expert testimony in Wisconsin. *Peters*, 192 Wis. 2d at 687. "Thus, the rule remains in Wisconsin that the admissibility of [expert testimony] is not conditioned upon its reliability. Rather, [such evidence] is admissible if:   (1) it is relevant, § 904.01, Stats.; (2) the witness is qualified as an expert, § 907.02, Stats.; and (3) the evidence will assist the trier of fact in determining an issue of fact, § 907.02." *Peters*, 192 Wis. 2d at 687–88 (citations omitted; footnotes omitted).

¶ 21.   This approach has served to reduce the "gatekeeper" role of the Wisconsin trial court when it comes to expert testimony. Reliability is not part of the trial court's function. Rather, "[r]eliability is an issue for the trier of fact, not the trial judge as a predicate for

[6] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

admissibility." Blinka, WISCONSIN PRACTICE: WISCONSIN EVI-
DENCE, § 702.202. "[T]he reliability of expert testimony
is an issue for the trier of fact, not the circuit court as
a predicate for admissibility." *State v. Davis*, 2002 WI
75, ¶ 22, 254 Wis. 2d 1, 645 N.W.2d 913, *reconsideration
denied*, 2002 WI 121, 257 Wis. 2d 123, 653 N.W.2d 894
(Wis. Sept. 20, 2002) (No. 00–2916–CR). Instead, Wis-
consin relies on the vehicle of cross-examination to test
the reliability of an expert witness. As the supreme said
in *State v. Walstad*, 119 Wis. 2d 483, 518–19, 351 N.W.2d
469 (1984):

> The fundamental determination of admissibility comes
> at the time the witness is "qualified" as an expert. In a
> state such as Wisconsin, where substantially unlimited
> cross-examination is permitted, the underlying theory
> or principle on which admissibility is based can be
> attacked by cross-examination or by other types of
> impeachment. Whether a scientific witness whose tes-
> timony is relevant is believed is a question of credibility
> for the finder of fact, but it clearly is admissible.

¶ 22. To the extent that the trial court may have
held that Wantz's testimony was unreliable as a matter
of law and therefore concluded that Wantz was not
qualified, the court exceeded its limited "gatekeeper"
function.

### 4. Timeliness

■

¶ 23. At both the summary judgment and recon-
sideration hearings, the trial court also indicated that
Wantz's affidavit was untimely. However, the court did
not cite to a statute or rule in support of this statement.
In addition, as with the issue concerning Wantz, the
court raised this issue sua sponte, without any motion

or claim from any of the defendants challenging the timeliness of the Riccos' response to the Rivas' summary judgment motion. Nor have the Rivas defended this statement by the trial court on appeal.

¶ 24. The record indicates that the Rivas filed their summary judgment motion on June 28, 2002. The Riccos filed their response, including Wantz's affidavit, on July 16, 2002. The trial court conducted the summary judgment hearing on July 29, 2002. Wisconsin Stat. § 802.08(2) requires that the opposing party must file opposing affidavits "at least 5 days before the time fixed for the hearing." Wantz's affidavit was clearly timely under this statute.[7]

¶ 25. We have also considered that the trial court's statement may have been premised on the local Waukesha County Circuit Court Rule which requires that "[a] respondent shall have fifteen (15) days from the service of the movant's motion within which to serve and file [responsive materials]." Rule 5.4(a) WI Rules: Local Court Rules, Waukesha County Cir. Ct. Under this rule, Wantz's affidavit was two days late. However, the Judicial Council Note accompanying the

---

[7] The time limits in Wis. Stat. § 802.08(2) apply unless a different time limit is set out in the scheduling order. Here, the scheduling order did not prescribe a different time limit for a response to a summary judgment motion. In fact, it was the Rivas' motion for summary judgment that was not timely under the scheduling order, which directed that such a motion was to be filed no later than February 1, 2002. The Rivas' motion was filed on June 28, 2002. The Riccos raised this issue in their written brief filed in response to the summary judgment motion. However, they did not pursue this argument in their oral presentations at the summary judgment hearing. Presumably that explains why the trial court did not address this issue in its ruling. We also note that the Riccos do not renew this issue on appeal.

enactment of the current Wis. Stat. § 802.08(2) makes clear that the statute was enacted to make uniform the time requirements for responding to a motion for summary judgment and to bar the application of local rules that imposed different time requirements:

> The prior sub. (2), allowing service of affidavits opposing summary judgment up to the date of hearing, afforded such minimal notice to the court and moving party that a plethora of local rules resulted. Requiring such affidavits to be served at least 5 days before the hearing is intended to preclude such local rules and promote uniformity of practice. Courts may require earlier filing by scheduling orders, however.

Judicial Council Note, 1992, Wis. Stat. § 802.08(2) (citation omitted).

¶ 26. In summary, Wis. Stat. § 802.08(2), not the local rule, governs this issue. The Wantz affidavit was timely.

### 5. The Appellate Remedy

¶ 27. Next, we address the appropriate remedy in light of our holdings. Separate and apart from the striking of Wantz's affidavit, the Rivas offer alternative reasons for upholding the trial court's dismissal of the Riccos' misrepresentation claims and their claims relating to certain specific categories of property. The Rivas also made these arguments to the trial court. However, our order granting leave to appeal expressly stated that "[w]e will not consider other grounds for granting summary judgment on the numerous claims dismissed by the circuit court in August, and the [Rivas] may not raise other grounds for affirming the circuit court, e.g. arguing that summary judgment would have been granted notwithstanding the decision to exclude the Riccos' expert."

712

¶ 28.   The trial court's bench decision is ambiguous as to whether the dismissal of the Riccos' claims rested solely on the striking of Wantz's affidavit or whether the court was adopting the Rivas' different arguments in support of their motion. We conclude it was the former because the court opened its bench decision with the ruling striking Wantz's affidavit, and only thereafter proceeded to dismiss the Riccos' claims, stating, "Without Mr. Wantz there is not even a whiff of any proof that the [Rivas] knew, or should have known that there was a defect in these matters."

¶ 29.   Except for the strict misrepresentation and negligent misrepresentation claims which the Riccos conceded were "not viable," we reinstate all of the Riccos' misrepresentation claims which are dependent upon Wantz's affidavit. We remand with directions that the trial court again address the Rivas' motion for summary judgment as to these claims. When doing so, the court shall consider the Wantz affidavit together with the other summary judgment evidence.

### *The Riccos'* Wis. Stat. *§ 100.18 Claim*

¶ 30.   The Riccos' complaint alleged that the Rivas violated Wis. Stat. § 100.18 when they, through their agents, attempted to sell their home by placing an advertisement in a periodical stating that there were "[l]iving quarters above stable" and stating in the MLS listing and real estate data sheet that there was an apartment with a full bath over the barn. The trial court dismissed this claim on the basis that the Riccos had already entered into an offer at the time of the

713

representations.[8] At the reconsideration hearing, the court broadened its ruling, noting that the statute immunizes a broker who makes a representation without knowing that the assertion is untrue, deceptive or misleading. Since the Riccos' claim was premised upon a representation made by the Rivas' broker, the court concluded that the Rivas could not be vicariously liable under the statute.

¶ 31. We review summary judgments independently, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). We will affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).[9]

¶ 32. WISCONSIN STAT. § 100.18(1) governs fraudulent representations and provides in relevant part:

---

[8] This issue is unrelated to the issues concerning Wantz or his claimed area of expertise. The alleged misrepresentation regarding the stable does not concern any claimed defect in the structure. Rather, the alleged misrepresentation concerns the *use* of the structure. We do not understand the Riccos to rely on Wantz regarding this claim.

[9] The Rivas argue that we should not address this issue since the Riccos did not raise it in their motion for reconsideration. We disagree. The Riccos' written motion expressly contended that they had been provided documents pertaining to the property prior to entering into the contract. In addition, the oral arguments at the hearing on the motion addressed the Rivas' contention that they could not be held liable under WIS. STAT. § 100.18 based upon a representation made by their broker—an argument adopted by the trial court in its reconsideration ruling.

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell . . . real estate . . . or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase . . . of any real estate . . . shall make, publish, disseminate, circulate, or place before the public . . . in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase . . . of such real estate . . . which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

However, the statute does not apply to real estate brokers who directly made a representation but did not know that the assertion or representation of fact was untrue, deceptive or misleading. Sec. 100.18(12)(b).

¶ 33. The Riccos argue that the trial court erred in its determination that they had already entered an offer at the time of the representations. They point to the affidavit of Belinda Ricco stating that she had reviewed the written materials supplied by the brokers and had relied on the representations in those materials when purchasing the property. This evidence clearly created a material issue of fact as to whether the Riccos relied on the information prior to purchasing the property. The trial court erred by granting summary judgment on this basis.

¶ 34. At the reconsideration hearing, the Rivas also argued that they could not be liable under Wis. Stat. § 100.18 for the representations of their broker. They argue that "[b]ecause the Rivas themselves did

715

not make any representations to the Riccos with respect to the horse barn, and because the Riccos cannot and do not seek to hold the real estate agents liable for those representations under [§] 100.18," the Rivas cannot be held statutorily liable for the representations.

¶ 35. Whether WIS. STAT. § 100.18 could apply to the Rivas even though their realtors are exempt from statutory liability presents a question of law that we review de novo. *See Nunez ex rel. Poulos v. Am. Family Mut. Ins.*, 2003 WI App 35, ¶ 23, 260 Wis. 2d 377, 659 N.W.2d 171, *review denied,* 2003 WI 32, 260 Wis. 2d 753, 661 N.W.2d 101 (Wis. Apr. 22, 2003) (No. 02–1041) (issues of statutory construction are questions of law subject to de novo review). When we interpret a statute, our goal is to ascertain and give effect to the intent of the legislature. *Id.,* ¶ 24. The first step in construing a statute is to look to the language of the statute itself and attempt to interpret it based on the plain meaning of its terms. *Id.* If the language of the statute is clear and unambiguous, we generally apply it to the facts at hand without further analysis. *Id.* However, the plain language of a statute should not be construed in a manner that leads to absurd or unreasonable results. *Id.* We presume that "the legislature intends for a statute to be interpreted in a manner that advances the purposes of the statute." *Id.* (citation omitted).

¶ 36. WISCONSIN STAT. § 100.18(1) expressly states that a "person" can violate its provisions by making untrue, deceptive or misleading representations in an effort to sell real estate. Clearly, the Rivas are "persons" within the meaning of the statute. Contrary to the Rivas' assertions, they are not exempt from application of the statute simply because the legislature made the

716

policy decision to exempt realtors from operation of the statute as long as the false representations were not knowingly made. The purpose of § 100.18 is to deter sellers of property from making false representations in order to induce a sale. *See Kailin v. Armstrong*, 2002 WI App 70, ¶ 44, 252 Wis. 2d 676, 643 N.W.2d 132. Were we to accept the Rivas' argument, sellers of property could simply "launder" their false representations through their realtor, thereby contravening the purpose of the statute. *See Nunez*, 260 Wis. 2d 377, ¶ 24.

■■

¶ 37. The summary judgment evidence submitted by the parties on this issue was in conflict as to the Rivas' contribution to the alleged misrepresentation by the broker. Daniel Riva testified in his deposition that he had not told the realtors that it was a living area, that it was never intended to be used as a living area and that he and his wife kept horse equipment in the area. However, Belinda Ricco stated in her affidavit that when looking at the property there were bunk beds there, an efficiency kitchen with a sink and kitchen table and a bathroom that contained a toilet and a shower. This evidence allows for the inference that the broker's representation that there was an apartment above the stable emanated from the Rivas. In addition, the Riccos submitted correspondence from the City of Muskego that "[the] separate quarters away from the main house is not allowed without Plan Commission approval. There were no building permits issued for work done on the living quarters above the stable." We hold that the summary judgment evidence reveals a material issue of fact as to whether the Rivas contributed to the broker's representation regarding the area above the stable.

717

¶ 38. In conclusion, we hold that Wis. Stat. § 100.18 may be applied to the Rivas and that there is a genuine issue of material fact as to whether and, if so, when the Rivas made false representations to the Riccos. We reverse the trial court's grant of summary judgment on the Riccos' § 100.18 claim. *See* Wis. Stat. § 802.08(2).

## CONCLUSION

¶ 39. We hold that the trial court erred in striking the Wantz affidavit, in striking Wantz as a witness at the trial, and in dismissing the Riccos' Wis. Stat. § 100.18 claim. Except for the negligent misrepresentation and strict misrepresentation claims, we reinstate the Riccos' remaining misrepresentation claims and their fraudulent representation claim under § 100.18. We remand for further proceedings on the Rivas' motion for summary judgment. At the remand hearing, the trial court shall consider all of the summary judgment evidence, including the Wantz affidavit.

*By the Court.*—Order reversed and cause remanded.