Chad NOVELL, Plaintiff-Appellant,

v.

Anthony MIGLIACCIO and Andrea Migliaccio,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2005AP2852. Oral argument February 29, 2008.
—Decided May 28, 2008.*

2008 WI 44

(Also reported in 749 N.W.2d 544.)

ZIEGLER, J., concurs.

For the defendants-respondents-petitioners there were briefs by *Joseph J. Welcenbach, Jeffrey K. Welcenbach,* and *Welcenbach Law Offices, S.C.,* Milwaukee, and oral argument by *Joseph J. Welcenbach.*

For the plaintiff-appellant there was a brief by *Daniel W. Stevens, Rudolph J. Kuss,* and the *Law Office of Daniel W. Stevens,* Brookfield, and oral argument by *Rudolph J. Kuss.*

An amicus curiae brief was filed by *O. Thomas Armstrong* and *von Briesen & Roper, S.C.,* Milwaukee, on behalf of Wisconsin Manufacturers & Commerce.

An amicus curiae brief was filed by *Jennifer M. Krueger* and *Murphy Desmond, S.C.,* Madison, on behalf of the Wisconsin Merchants Federation, Inc.

An amicus curiae brief was filed by *Debra P. Conrad,* Madison, on behalf of the Wisconsin REALTORS® Association.

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Anthony and Andrea Migliaccio, seek review of an unpublished court of appeals decision reversing a circuit court order that had granted summary judgment in favor of the Migliaccios and dismissed the Wis. Stat. § 100.18[1] statutory misrepresentation claim of Chad Novell, the respondent.[2] They contend that the court of appeals erred when it concluded that reasonable reliance is not an element of the statutory misrepresentation claim.

¶ 2. Rather, the Migliaccios assert that in pursuing a § 100.18 cause of action, a plaintiff is required to prove reasonable reliance as an element of the statutory misrepresentation claim. Additionally they advance that even if the plaintiff does not have the burden to prove reasonable reliance as an element of the statutory claim, the circuit court nevertheless correctly granted summary judgment because there existed no genuine issue of material fact that the reliance here was unreasonable.

¶ 3. Based on an examination of the words of the statute, its purpose, and our case law interpreting the statute, we conclude that a plaintiff is not required to prove reasonable reliance as an element of a § 100.18 misrepresentation claim. However, the reasonableness

---

[1] All citations to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] *See Novell v. Migliaccio,* No. 2005AP2852, unpublished slip opinion (Wis. Ct. App. Oct. 17, 2006)(affirming in part and reversing in part a judgment of the circuit court for Milwaukee County, Michael D. Guolee, Judge).

of a plaintiff's reliance may be relevant in considering whether the representation materially induced (caused) the plaintiff to sustain a loss. We further conclude that the circuit court erred in granting summary judgment because there remained genuine issues of material fact as to whether the reliance on the representation was unreasonable, that is whether the representation here was a material inducement causing the plaintiff's loss. Accordingly, we affirm the decision of the court of appeals.

I

¶ 4. This dispute arises from the sale of a house with a leaky basement. In the fall of 2002, Chad Novell ("Novell") was living with his parents and was in the market to purchase a home. A woman who was a long-time friend of Novell's mother and the family's former cleaning lady was aware of Novell's search. She informed the Novells that her sister and brother-in-law, Andrea and Anthony Migliaccio, were thinking of selling their home.

¶ 5. After hearing this information, the Novells contacted the Migliaccios regarding the sale of their home. In October 2002, after the Novells viewed the home, Novell's father e-mailed the Migliaccios stating that they had prepared an offer to purchase. The Migliaccios replied that they were not yet ready to sell.

¶ 6. In January 2003, the Novells again contacted the Migliaccios asking if they were ready to entertain an offer to purchase. In response, the Migliaccios informed the Novells that they would be willing to discuss the sale after they had secured financing for their new home. The Novells replied, asking for a timeline. In April, Andrea Migliaccio contacted Novell and advised

that they were willing to sell their home. Novell viewed the home for a second time in June 2003 and made an offer to purchase the home for $172,500. The Migliaccios accepted the offer.

¶ 7. As a part of the sale, the Migliaccios prepared a Real Estate Condition Report. The Real Estate Condition Report is a standard report required under Wisconsin law that obliges the sellers of a home to attest to any known defects in the property. Wis. Stat. § 709.02. A "defect" is defined in the report as "a condition that would have a significant adverse effect on the value of the property . . . ." Wis. Stat. § 709.03. Consistent with § 709.03, the form advises sellers that while it is not a warranty, prospective buyers may rely on their statements in deciding whether to purchase the property and under what terms.

¶ 8. The form specifically inquires regarding conditions of the home. Relevant here, it asks if the seller is "aware of defects in the basement or foundation (including cracks, seepage, and bulges)." It further defines basement defects as including "flooding, extreme dampness or wet walls, unsafe concentrations of mold, or defects in drain tiling or sump pumps." The Migliaccios' response on the form denied any knowledge of such defects.

¶ 9. At the end of the Real Estate Condition Report is a separate inquiry regarding the Migliaccios' knowledge of water or moisture problems. Again, they denied any "aware[ness] of the presence of . . . water or moisture intrusions or conditions that might indicate the growth of unsafe levels of mold." Both Andrea and Anthony Migliaccio signed and dated the form under the "Owner's Certification," thereby attesting to the accuracy of their statements.

138

¶ 10. Before closing, Novell hired a home inspector to inspect the home. The home inspection report categorized and evaluated areas of the Migliaccios' home. Under each area, the inspector evaluated items in the area as either "Acceptable," "Not Present," "Not Inspected," "Marginal," or "Defective." The inspector listed the foundation as "Marginal" and noted displacement and stair step cracks in the basement walls. He recommended that Novell hire a foundation specialist to provide further evaluation and suggested that the wall cracks should be monitored.

¶ 11. On a separate page, in the "Basement" section of the report, the inspector described the sump pump and moisture readings in the southwest corner of the basement as "Marginal." He stated that the sump pump was operative but submerged and that the drain line was not properly connected or not draining away from the foundation.

¶ 12. The inspector also noted water stains in the southwest corner of the basement and high moisture readings. To remedy the problem, he recommended "extending exterior downspouts[,] proper grading [and] extend[ing] the sump pump piping to divert water away from foundation." The Migliaccios agreed to make these improvements as a condition of the sale.

¶ 13. After examining the house and preparing the inspection report, the inspector went through the house with Novell, Novell's father, and Anthony Migliaccio. During this visit, the inspector had concerns regarding bowing and cracking in the basement walls and the presence of water in the basement. In order to ascertain whether he should remove wood paneling that covered much of the basement walls, the inspector pointed out the bowing and cracking to Anthony Migliaccio and expressed his concern about whether the wall

or the cracks had been moving and if there had been water in the basement before. Migliaccio responded that "[t]here had never been water in the basement . . . [that] the bow had not moved, and [that] the cracks had not moved since the time that they had occupied the house." At the time the Migliaccios sold their home, they had been living there for approximately nine years.

¶ 14. The inspector also asked if the walls had been painted by the Migliaccios or whether they had been painted by the previous owner. Migliaccio responded that he had not painted the walls, but that they had been painted by the previous owner. Novell considered Migliaccio's representation that the walls had not been painted in the nine years the Migliaccios had lived in the house as an indication that the walls and cracks were not moving. Further, Novell later testified that he did not consider it necessary to hire an additional specialist "[b]ased on Mr. Migliaccio's word that he had never had water in his basement, and that he not painted his walls, and had not had any previous problems or noticed any movement . . . as a friend of the family."

¶ 15. Novell purchased the home in September 2003. He moved in on November 15, 2003.

¶ 16. In early 2004 Novell smelled a foul odor in the basement. He noticed standing water in the northwest area of the basement. The water covered about one-third of the area of the finished basement. The basement flooded in that area at least five to seven times that season, generally when the snow melted or when it rained.

¶ 17. Novell contacted the home inspector who had performed the initial assessment of the house. In a June 2, 2004, letter to Novell, the inspector recounted his original assessment of the home. He recalled that

140

the walls at the southwest corner of the basement near the sump pump had cracks and displacement, that the walls were wet to the touch, and that there were elevated moisture readings. In addition, he remembered telling Novell and his father to hire a basement foundation specialist to fully determine the "cause and effect" of the present wall cracks and displacement in the southwest corner of the basement. As to the wetness, the inspector recalled attributing wetness to "a combination of poor grading and improper sump pump use." He indicated that he also remembered saying that a foundation specialist "could also perform a test on the drain tile to see if the system is working properly."

¶ 18. After communicating with the home inspector, Novell hired a professional engineer. In contrast to the findings of the home inspector who noted cracks, displacement, and wet walls in the southwest corner of the basement, the engineer focused on the northwest corner of the basement, where there had been standing water. He concluded that the northwest corner of the basement was the source of the water problems. He opined that water had been entering in northwest area for the past decade, and that the water was coming from behind the wooden paneling on the walls. His inspection revealed "areas of paneling that were badly water stained and furring strips behind the paneling that were rotting."

¶ 19. The engineer stated that based on the cracks in the basement that were patched and concealed, it was his opinion that "the sellers of the house would have experienced problems to the same degree that Mr. Novell did." He further opined that "if the sellers lived in the house five to ten years, they would have experienced numerous periods of water intrusion comparable to that of Mr. Novell."

¶ 20. Novell also hired a foundation specialist, who concluded that the basement walls had been painted recently to conceal the presence of cracks. The foundation specialist determined that water had been leaking into the basement for at least the previous three years.

¶ 21. Novell filed a complaint against the Migliaccios alleging six causes of action: (1) breach of contract; (2) intentional misrepresentation; (3) misrepresentation in violation of Wis. Stat. §§ 895.80 and 943.20(1)(d); (4) misrepresentation in violation of Wis. Stat. § 100.18; (5) strict responsibility representation; and (6) negligent misrepresentation. In July 2005, the Migliaccios moved for summary judgment. The circuit court granted the motion and entered summary judgment on all claims. With respect to the § 100.18 claim, the circuit court determined as a matter of law that justifiable reliance was an element and that Novell was not justified in relying on the misrepresentations of the Migliaccios.

¶ 22. Novell appealed the circuit court's grant of summary judgment on all claims. The court of appeals affirmed the circuit court's summary judgment on five of the six claims. With respect to the § 100.18 cause of action, however, the court of appeals reversed the circuit court's order. It concluded that reasonable reliance is not an element of a § 100.18 claim. The Migliaccios petitioned for review. Novell did not cross-petition.

II

¶ 23. This case requires us to determine whether the court of appeals erred in reversing the circuit court's grant of summary judgment. We review the

142

grant or denial of summary judgment independently, but apply the same methodology as used by the circuit court. *Wis. Mall Props., LLC v. Younkers, Inc.,* 2006 WI 95, ¶ 19, 293 Wis. 2d 573, 717 N.W.2d 703. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the party opposing the motion. *Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶ 23, 241 Wis. 2d 804, 623 N.W.2d 751. If there is any reasonable doubt regarding whether there exists a genuine issue of material fact, that doubt must be resolved in favor of the nonmoving party. *Schmidt v. Northern States Power Co.,* 2007 WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294.

¶ 24. In addition, we are called upon to interpret the elements of a claim under Wis. Stat. § 100.18. Questions of statutory interpretation and application present questions of law which we review independently of the determinations rendered by the circuit court and the court of appeals. *Kierstyn v. Racine Unified School Dist.,* 228 Wis. 2d 81, 88, 596 N.W.2d 417 (1999).

### III

¶ 25. The Migliaccios contend that the court of appeals erred in determining that reasonable reliance is not an element of a § 100.18 cause of action. They argue that based on § 100.18 and cases interpreting the statute, Novell must prove reasonable reliance in order to meet the elements of a § 100.18 cause of action.

¶ 26. In determining whether reasonable reliance is an element of a Wis. Stat. § 100.18 claim, we begin

143

our analysis by examining the words of the statute. Section 100.18(1) prohibits making false representations with the intent to sell real estate.

> No person . . . with intent to sell . . . real estate . . . shall make, publish, disseminate, circulate, or place before the public . . . [a] statement or representation of any kind to the public relating to such . . . sale . . . of such real estate . . . or to the terms or conditions thereof, which . . . statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

A person suffering pecuniary loss because of a violation of § 100.18(1) may recover damages under § 100.18(11)(b)2, which provides:

> Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees . . . .

¶ 27. A plain reading of the statute reveals that reasonable reliance is not an element of a statutory false representation claim. Section 100.18(1) prohibits making misrepresentations to the public with the intent to sell, and § 100.18(11)(b)2 provides for recovery when such misrepresentations cause pecuniary loss.

¶ 28. The words "rely," "relied," and "reliance" appear nowhere in the text of either § 100.18(1) or § 100.18(11)(b)2. Rather, § 100.18(11)(b)2 provides that "any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction . . . ."

¶ 29. Accordingly, there is no indication based on the language of the statute that the legislature sought

to limit a purchaser's ability to bring a claim under § 100.18 only to those circumstances in which the plaintiff can show reasonable reliance as a statutory element. Absent any ambiguity in the statute to the contrary, it should be assumed that the legislature intended courts to interpret the statute as written.

¶ 30. In addition, the purpose of § 100.18 does not support the proposition that reasonable reliance is an element of a § 100.18 claim. This court and the court of appeals have made clear that the purpose of § 100.18 is to deter sellers from making false and misleading representations in order to protect the public. In *State v. Automatic Merchandisers of America, Inc.,* this court determined that the statute applied to face-to-face communications in addition to media advertisements because the statute was "intended to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product." 64 Wis. 2d 659, 663, 221 N.W.2d 683 (1974).

¶ 31. Similarly, in *Ricco v. Riva,* the court of appeals determined that a plaintiff could state a cause of action under § 100.18 for misrepresentations a seller made to a realtor, who unknowingly passed the misrepresentations along to the plaintiff. 2003 WI App 182, ¶ 36, 266 Wis. 2d 696, 669 N.W.2d 193. Realtors who are unaware that a representation is untrue are immune from liability. Wis. Stat. § 110.18(12)(b). However, the court of appeals determined that extending such immunity to sellers would undermine "[t]he purpose of § 100.18 [which] is to deter sellers of property from making false representations in order to induce a sale." *Id. See also Grube v. Daun,* 173 Wis. 2d 30, 57, 496 N.W.2d 106 (Ct. App. 1992)("the statute intends to protect the public from all untrue, deceptive or misleading representations made in sales promotions, includ-

ing representations made in face-to-face sales where no media advertising is involved.").

¶ 32. Deterrence does not depend on reasonable reliance. Requiring that plaintiffs demonstrate reasonable reliance as a statutory element of a § 100.18 claim therefore would not fulfill the statutory purpose.

¶ 33. The Migliaccios recognize that § 100.18 contains neither the word "rely" nor a variation of the word. They maintain instead that Wisconsin case law interpreting the statute demonstrates that reasonable reliance is an element of § 100.18 claims.

¶ 34. Among the cases the Migliaccios cite is *Tim Torres Enters., Inc. v. Linscott,* 142 Wis. 2d 56, 416 N.W.2d 670 (Ct. App. 1987). Torres filed a § 100.18 suit alleging that Linscott's advertisements falsely claimed that it was the only establishment selling Gilles frozen custard. *Id.* at 62–63. Linscott contended that Torres had failed to adduce sufficient evidence to demonstrate that the advertising caused damages. *Id.* at 69. The court of appeals determined that § 100.18 required some evidence that false advertising caused damages. *Id.* at 70. The circuit court's jury instruction on cause included the statement that "there must be some actual consumer reliance on the signs before awarding pecuniary damages." *Id.* The court of appeals determined that there was evidence to show such reliance, and that such evidence was sufficient for a jury finding that the advertising caused damages. *Id.*

¶ 35. The Migliaccios also cite to a federal case discussing reliance in the context of a § 100.18 claim. In *Valente v. Sofamor, S.N.C.,* the plaintiffs received bone screws during spinal fusion surgery. 48 F. Supp. 2d 862, 863 (E.D. Wis. 1999). They alleged that the screws were defective and caused injury, and among the causes of action pled was a § 100.18 false advertising claim. *Id.* at

864. The court determined that the plaintiffs were unable to establish a causal connection between the defendants' conduct and their pecuniary loss on the ground that they had failed to show "that they or their doctors relied on the defendants' allegedly fraudulent representations when they elected to undergo spinal fusion surgery." *Id.* at 874.

¶ 36. *Tim Torres* and *Valente* demonstrate that a person's reliance on a representation can suffice to show that a representation materially induced (caused) loss. The question here, however, is whether *reasonable* reliance is a necessary element in a § 100.18 claim. Those cases do not address the reasonableness of the reliance. The *Tim Torres* court did not ask whether consumers relying on representations that a seller was the sole purveyor of Gilles frozen custard were reasonable to do so. Similarly, the *Valente* court required that patients or their doctors relied on the representations. It did not examine whether they would have been reasonable to do so. Thus, the two cases fail to support the Migliaccios' argument.

¶ 37. The Migliaccios also rely on the recent court of appeals decision in *Malzewski v. Rapkin,* 2006 WI App 183, 296 Wis. 2d 98, 723 N.W.2d 156. The Malzewskis offered to buy a house from the Rapkins. The offer stated that the seller had no knowledge of conditions affecting the property other than those listed in the seller's Real Estate Condition Report. In the Real Estate Condition Report, the Rapkins represented that they were aware of basement or foundation defects, including "cracks, seepage and bulges." *Id.,* ¶ 2. They further stated that during "very heavy rainstorms, there might be a little seepage in the walls/floors," but that they had "regraded to correct this." *Id.*

¶ 38. The offer also contained an inspection contingency, such that sale was contingent on the house passing inspection. *Id.*, ¶ 3. The Malzewskis waived their inspection right and purchased the home. *Id.*, ¶ 4. Less than a year after they purchased the home, paint peeled from the basement walls to reveal pre-existing cracks. *Id.*, ¶ 5. An expert hired by the Malzewskis to evaluate their walls informed them that the cracks had been there for many years and estimated repair costs at over $25,000. *Id.*

¶ 39. The Malzewskis sued, alleging a variety of causes of action, including a § 100.18 statutory misrepresentation claim. The circuit court granted the Rapkins' motion for summary judgment on all claims, and the Malzewskis appealed. *Id.*, ¶ 10. The court of appeals affirmed summary judgment with respect to the causes of action for intentional misrepresentation, strict liability misrepresentation, negligent misrepresentation, and theft-by-fraud on the ground that those causes of action each include an element of justifiable reliance. *Id.*, ¶¶ 17–26.

¶ 40. With respect to the § 100.18 claim, however, the court of appeals reversed on the ground that reasonable reliance is not an element. *Id.*, ¶ 24. Rather, it determined that reasonable reliance may "be considered by a jury in determining whether the purchaser in fact relied on the seller's representation." *Id.* Nonetheless, the court stated in a footnote that there are circumstances in which reasonable reliance should be an element of a § 100.18 claim:

> There are, nevertheless, undoubtedly some circumstances where reasonable reliance *should* be an element of a claim for false advertising that is decided as a matter of law. For example, a company, in connection with the recently released film "Superman Returns"

(Warner Bros. Studios 2006) advertises a blue cloak that it represents will *actually* permit someone to fly. We would be hard pressed to say . . . that a trial is required if an adult of normal intelligence who buys the cloak would have a claim under Wis. Stat. § 100.18 if the cloak did not let the buyer fly, whether faster or slower than a "speeding bullet."

*Id.*, ¶ 24 n.3 (emphasis in original).

¶ 41. We agree with the Migliaccios that *Malzewski* is directly applicable to the present case. The cases are factually and procedurally very similar. Both cases involve the seller of a home concealing basement water problems, and in both cases the plaintiffs alleged both common law and § 100.18 statutory misrepresentation claims. The circuit courts in both cases granted the defendants' motions for summary judgment with respect to all claims. Both courts based their decision on unreasonable reliance. Moreover, like the court of appeals in this case, the *Malzewski* court affirmed summary judgment on the common law claims but reversed with respect to the § 100.18 claim because reasonable reliance is not an element.

¶ 42. However, given these similarities, and the value of *Malzewski* as precedent, it is surprising that the Migliaccios cite it in support of their position. Regardless of the footnote mentioning reasonable reliance, the *Malzewski* court was explicit that reasonable reliance is not an element of a § 100.18 misrepresentation claim. *Malzewski* distinguishes § 100.18 claims from common law misrepresentation claims on that basis. Thus, rather than supporting the Migliaccios' position, *Malzewski* confounds it.

¶ 43. Finally, the Migliaccios cite this court's recent analysis of § 100.18 in *K&S Tool & Die Corp. v. Perfection Mach. Sales Inc.*, 2007 WI 70, 301 Wis. 2d

109, 732 N.W.2d 792. The plaintiff, a manufacturer of heavy industrial parts, purchased an industrial press based on Perfection's written representations that the press would conform to the needs of K&S. *Id.*, ¶ 1. After purchase, K&S discovered that the machinery was not designed for its needs, and it sued Perfection under § 100.18. *Id.*

¶ 44. Relevant here is our analysis of the elements of the cause of action. We stated that to prevail on a § 100.18 claim, the plaintiff must prove three elements: (1) the defendant made a representation to the public with the intent to induce an obligation, (2) "that the representation was untrue, deceptive or misleading," and (3) "that the representation caused the plaintiff a pecuniary loss." *Id.*, ¶ 19 (citing *Tietsworth v. Harley Davidson, Inc.*, 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 677 N.W.2d 233; Wis JI—Civil 2418).

¶ 45. In discussing the plaintiff's burden, we stated that K&S had to prove "that Perfection's misrepresentation . . . caused it to sustain a pecuniary loss." *Id.*, ¶ 34. Going further, we stated that a "plaintiff *does not* have the burden of proving reasonable reliance." *Id.*, ¶ 36 (emphasis added). We contrasted § 100.18 claims with common law misrepresentation claims on the ground that "[u]nlike common law causes of action for misrepresentations, reasonable reliance is not the standard for a [§ 100.18] claim because the legislature created a distinct cause of action." *Id.*

¶ 46. The fact that common law misrepresentation claims require reasonable reliance was insufficient for us to conclude that a § 100.18 claim requires reasonable reliance. We determined that by enacting § 100.18 the legislature did not intend to merely add yet another remedy for common law misrepresentation:

> There is no indication in §§ 100.18(1), 100.18(11)(b)2, and 100.18(11)(b)3 or any of the other many and detailed subsections that make up § 100.18, that the legislature intended to add a remedy for common law misrepresentation claims rather than to create a distinct statutory cause of action.

*Id.* (quoting *Kailin v. Armstrong,* 2002 WI App 70, ¶ 44, 252 Wis. 2d 676, 643 N.W.2d 132).

¶ 47. Nonetheless, we stated that even though a plaintiff need not prove reasonable reliance in a § 100.18 claim, "the reasonableness of a plaintiff's reliance may be relevant in considering whether the representations materially induced the plaintiff's pecuniary loss . . . ." *Id.* In support of this proposition, we cited *Malzewski.*

¶ 48. As with *Malzewski,* we were explicit that plaintiffs in § 100.18 actions do not have to demonstrate reasonable reliance as an element of the statutory claim. *K&S Tool & Die,* 301 Wis. 2d 109, ¶ 36. Thus, neither the language of the statute, the purpose of the statute, nor the case law supports the Migliaccios' argument that reasonable reliance is an element of a § 100.18 cause of action.

¶ 49. The Migliaccios maintain that even if reasonable reliance is not an element of a § 100.18 claim, the reasonableness of a person's actions in relying on representations is a defense and may be considered by a jury in determining cause. We agree. As set forth above, there are three elements in a § 100.18 cause of action: (1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was "untrue, deceptive or misleading," and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff. *K&S Tool and Die,* ¶ 19;

*see also* Wis JI—Civil 2418.[3] Reliance is an aspect of the third element, whether a representation caused the plaintiff's pecuniary loss. *Tim Torres,* 142 Wis. 2d at 70; *Valente,* 48 F. Supp. 2d at 874.

¶ 50. Rather than suggesting that reasonable reliance is an element of a § 100.18 claim, *K&S* and *Malzewski* show that a jury may consider the reasonableness of a person's reliance on a misrepresentation in determining whether there had been a material inducement. That is the sense in which "the reasonableness of a plaintiff's reliance may be relevant in considering whether the representation materially induced the plaintiff's pecuniary loss . . . ." *K&S Tool & Die,* 301 Wis. 2d 109, ¶ 36.

¶ 51. Seen in this light, the statement in *Malzewski* that in some cases reasonable reliance "*should* be an element of a claim for false advertising that is decided as a matter of law" is simply an assertion regarding circumstances in which circuit courts may determine as a matter of law that a misrepresentation did not cause pecuniary loss. That is, there are cases in which a circuit court may determine as a matter of law that a plaintiff's belief of a defendant's representation is unreasonable, and as a result the plaintiff's reliance

---

[3] Wis JI—Civil 2418 sets forth the third element of a Wis. Stat. § 100.18 statutory misrepresentation claim as follows:

> Third, (plaintiff) sustained a monetary loss as a result of the (assertion) (representation) (statement). In determining whether (plaintiff)'s loss was caused by the (assertion) (representation) (statement), the test is whether (plaintiff) would have acted in its absence. Although the (assertion) (representation) (statement) need not be the sole or only motivation for (plaintiff)'s decision to (buy) (rent) (use) the _____ [product or item], it must have been a material inducement. That is, the (assertion) (representation) (statement) must have been a significant factor contributing to (plaintiff)'s decision.

(which is based on the unreasonable belief) is also unreasonable. The circuit court may determine that the representation did not materially induce the plaintiff's decision to act and that plaintiff would have acted in the absence of the representation. *See* Wis. JI-Civil 2418.

¶ 52. Using the illustrative example from *Malzewski,* a circuit court may determine that a plaintiff's belief that a Superman cloak could "*actually* permit someone to fly" is unreasonable, and that relying on a claim that the cloak bestows the power of flight would therefore be unreasonable. 296 Wis. 2d 98, ¶ 24 n.3. On that basis, the court may further determine that such a claim did not materially induce a person to purchase the cloak as a matter of law. Thus, the representation could not cause the buyer's pecuniary loss as a matter of law.

¶ 53. We therefore agree with the court of appeals' analysis. Based on the plain language of § 100.18, the statutory purpose of protecting the public by deterring sellers from making false representations, and the cases interpreting the statute, we determine that reasonable reliance is not an element of a § 100.18 cause of action. Rather, the reasonableness of a plaintiff's reliance may be relevant in considering the third element of such a claim, that is whether a representation materially induced (caused) the plaintiff to sustain a pecuniary loss.

IV

¶ 54. Having addressed the role of reasonableness in a § 100.18 cause of action, we turn to the question of whether summary judgment on Novell's § 100.18 claim was appropriate. The circuit court determined that Novell's reliance on the Migliaccios' representations was unreasonable as a matter of law based upon the

153

infirmities listed in the inspection report and the inspector's recommendation that Novell seek the professional opinion of a foundation specialist. The Migliaccios maintain that the circuit court's view is correct.

¶ 55. The evidence is equivocal as to whether Novell's reliance on the Migliaccios' representations was unreasonable. To begin, the Real Estate Condition Report signed by the Migliaccios stated that buyers may rely on the statements contained in the report in deciding whether, and on what terms, to purchase the property. The Migliaccios' report indicated that they were not aware of any defects (i.e., any "condition that would have a significant adverse effect on the value of the property") in the basement or the foundation.

¶ 56. Moreover, the Home Inspection Report, prepared by Novell's home inspector, is equivocal as to whether Novell acted unreasonably in not hiring additional specialists to examine the integrity of the basement and the foundation. Although the report describes several problems with the foundation and basement, it cannot be concluded as a matter of law that the report alerted Novell to the water problems he would experience after moving into his new home.

¶ 57. The report describes sump pump problems, high moisture readings, and water stains in the southwest corner of the basement. However, those problems are in a different area than the damage at issue in the present action, which was in the northwest part of the basement. Further, Novell required that the Migliaccios correct the problems in the southwest corner as a condition of purchasing the home. With respect to the inspector's recommendation that Novell consult an expert, a reasonable interpretation of the report is that

the inspector recommended that Novell hire an expert to examine the foundation rather than an expert to assess flooding.

¶ 58. Juxtaposed to the inspector's report and recommendation, Novell had Anthony Migliaccio's statements that the basement walls had not been painted, that the cracks and bow in the walls had not moved, and that there had been no water in the basement during the nine years the Migliaccios lived in the house. The statements were made in direct response to the inspector's concerns, and Novell testified that he placed faith in the statements based on the relationship between the families. Novell contends that it was on the basis of Anthony Migliaccio's representations, and the family relationship, that he determined it was unnecessary to hire further experts.

¶ 59. This is not a case where it is beyond any reasonable doubt that the homebuyer simply refused to take the definitive advice of a home inspector. Rather, when the evidence is viewed in the light most favorable to Novell, his reliance was not unreasonable. The decision whether to hire another expert to examine the foundation and the decision whether to remove the paneling to examine the wall behind were based upon how recently the walls had been painted and on Migliaccio's statement that he had never experienced water problems in the basement. That is, if the walls had been painted recently or if the Migliaccios had experienced water in the basement, it would be more likely that there remained foundation or basement defects requiring an expert's help. Those, however, are precisely the representations which form the basis of the § 100.18 claim. Novell contends that the false

155

representations are what caused him to act in the way that the Migliaccios consider unreasonable.

¶ 60. In such circumstances, Novell's reliance is not unreasonable as a matter of law. Rather, there remain genuine issues of material fact as to whether his reliance was unreasonable.

· ¶ 61. As explained above, there are cases in which a circuit court may determine as a matter of law that a plaintiff's belief of a defendant's representation is unreasonable, and as a result the plaintiff's reliance is therefore also unreasonable. In such cases the circuit court may determine that the representation did not materially induce (cause) the plaintiff's decision to act as a matter of law. This, however, is not such a case.

¶ 62. Rather, the evidence in this case is such that a reasonable jury could determine that the Migliaccios' representations caused Novell's loss and return a verdict in favor of Novell on the § 100.18 claim. Thus, the circuit court erred in granting summary judgment on Novell's § 100.18 claim.

¶ 63. The Migliaccios maintain, however, that Novell's reliance on the Migliaccios' representations is unreasonable as a matter of law because that aspect of the circuit court's decision is not subject to review. The court of appeals affirmed the circuit court's summary judgment on five causes of action on the ground that Novell's reliance was unreasonable. Novell has not sought review of that determination. The Migliaccios therefore contend Novell's reliance was unreasonable as a matter of law based on the law of the case doctrine.

¶ 64. The Migliaccios' argument misses the mark. The law of the case doctrine is a "longstanding rule that a decision on a legal issue by an appellate court estab-

lishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." *State v. Stuart,* 2003 WI 73, ¶ 23, 262 Wis. 2d 620, 664 N.W.2d 82. It binds the circuit court and appellate courts to apply decisions of the court of appeals and supreme court in subsequent proceedings. *Id.* The current proceeding, however, is a review of a court of appeals decision, not a "subsequent proceeding in the trial court or [a] later appeal." As such, the law of the case doctrine is inapplicable.

■

¶ 65. Nonetheless, the Migliaccios are correct that the circuit court's summary judgment order regarding Novell's common law causes of action, which was based on its determination that Novell acted unreasonably, is not under review. Novell has failed to preserve those issues insofar as he has not cross-petitioned for review. *See* Wis. Stat. (Rule) § 809.62(7); *Hommel v. Hommel,* 162 Wis. 2d 782, 795–96, 471 N.W.2d 1 (1991)(a party that fails to file a petition for cross-review of a court of appeals decision may not raise argument in the supreme court calling for reversal of the court of appeals decision).

¶ 66. Because of the equivocal information available to Novell, the fact that the Migliaccios made misrepresentations in direct response to the home inspector's concerns, and the Migliaccios' relationship with Novell's family, Novell's reliance on the representations was not unreasonable as a matter of law. There thus remains a genuine issue of material fact as to whether the representations materially induced (caused) pecuniary loss to Novell, and the circuit court erred in granting summary judgment on the § 100.18 claim. Our determination here does not upset the circuit court's order granting summary judgment on the

other causes of action, which the court of appeals affirmed, and for which Novell has not sought review.

V

¶ 67. In sum, based on an examination of the words of the statute, its purpose, and our case law interpreting the statute, we conclude that a plaintiff is not required to prove reasonable reliance as an element of a § 100.18 misrepresentation claim. However, the reasonableness of a plaintiff's reliance may be relevant in considering whether the representation materially induced (caused) the plaintiff to sustain a loss. We further conclude that the circuit court erred in granting summary judgment because there remained genuine issues of material fact as to whether the reliance on the representation was unreasonable, that is whether the representation here was a material inducement causing the plaintiff's loss. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 68. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I concur with the majority's determination that the court of appeals' decision should be affirmed. In this case, there are genuine issues of material fact that preclude summary judgment.

¶ 69. The seminal issue on appeal in this case is whether reasonable reliance is an element of the statutory misrepresentation claim. In following *K&S Tool & Die Corporation v. Perfection Machinery Sales, Inc.,* 2007 WI 70, 301 Wis. 2d 109, 732 N.W.2d 792, reasonable reliance is not an element of a Wis. Stat. § 100.18 misrepresentation claim. I write separately, however,

158

because reasonable reliance is a valid consideration not only for the fact finder, but also the circuit court judge and even at summary judgment.

¶ 70. The second and third elements of a Wis. Stat. § 100.18 claim include reasonable or justifiable reliance as a consideration. "[T]he reasonableness of a plaintiff's reliance may be relevant in considering whether the representation materially induced (caused) the plaintiff to sustain a loss." Majority op., ¶ 3. Thus, a court may consider whether the representation materially induced the plaintiff's pecuniary loss. *K&S Tool & Die Corp.*, 301 Wis. 2d 109, ¶ 37.

¶ 71. I write separately because I believe that under different facts the court may rightfully determine, as a matter of law, that a party's reliance is so unreasonable that summary judgment or dismissal of a Wis. Stat. § 100.18 claim is appropriate. I do not want the majority decision today to be viewed as an absolute bar to summary judgment determination of a § 100.18 claim, under all circumstances. While an unscrupulous seller ought not benefit from deceiving a purchaser, § 100.18 ought not protect a fully informed consumer who, with knowledge that a defect exists, ignores the obvious, proceeds to purchase, and then later makes a claim for statutory misrepresentation.

¶ 72. While I do not advocate for the protection of a seller who purposefully misrepresents the condition of a home and lies to a purchaser in order to induce the sale of a home, there may be circumstances where a buyer should be held responsible for his or her failure to take reasonable action. This decision today does not address such a situation where the buyer has actual knowledge that representations are untrue or has independent knowledge regarding a defective condition, but proceeds to purchase despite that knowledge. This

159

decision does not address a situation where there is no question that the seller has innocently acted and defects are later discovered. What the court has decided today is that here, there are genuine issues of material fact that cannot be resolved at summary judgment.

¶ 73. For the foregoing reasons I concur.